UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cr-20013-RKA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ARTEM OLEGOVICH ALAFYEV,

      Defendant.

_____

## **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND MEMORANDUM OF LAW**

**COMES NOW**, Defendant Artem Olegovich Alafyev, by and through undersigned counsel, pursuant to the Fourth and Fifth Amendments to the United States Constitution, Federal Rule of Criminal Procedure 12(b)(3)(C), and Local Rule 88.10 of the Southern District of Florida, respectfully moves this Honorable Court to suppress all evidence obtained from the warrantless search of his Apple iPhone 16 Pro Max on January 3, 2025, at Port Miami, Terminal D, and all fruits thereof. In support of this Motion, Defendant submits the following memorandum of points and authorities.

[Continued on next page]

## TABLE OF CONTENTS

- I. INTRODUCTION ...................................................................................................1

- II. STATEMENT OF FACTS ......................................................................................3

  - A. Pre-Disembarkation Targeting ...............................................................3

  - B. The Initial "Manual" Search...................................................................4

  - C. Subsequent Forensic Analysis ................................................................5

- III. LEGAL STANDARD ...........................................................................................5

  - A. Fourth Amendment Protections Against Unreasonable Searches ..........5

  - B. Border Search Exception and Its Limitations ........................................6

  - C. Cell Phone Searches and the Fourth Amendment ..................................6

  - D. Reasonable Suspicion Standard .............................................................7

  - E. Transportation of CSAM - Legal Elements............................................8

- IV. ARGUMENT ........................................................................................................8

  - A. The Search Was Pretextual and Lacked Reasonable Suspicion .............8

  - B. The Initial "Manual" Search Was, in Fact, Forensic in Nature and Required a Warrant................................................................................................10

  - C. The Subsequent Forensic Search Violated the Fourth Amendment .......12

  - D. Suppression Is Warranted......................................................................14

  - E. The Evidence Does Not Support Transportation Charges......................15

- REQUEST FOR RELIEF ............................................................................................17

- CERTIFICATE OF GOOD FAITH CONFERENCE .......................................................18

- REQUEST FOR A HEARING .....................................................................................18

- CERTIFICATE OF SERVICE ......................................................................................18

## I. INTRODUCTION

This case presents a constitutional challenge to increasingly invasive digital searches at our nation's borders. On January 3, 2025, U.S. Customs and Border Protection ("CBP") officers conducted a warrantless search of Defendant's iPhone at Port Miami, allegedly discovering child sexual abuse material ("CSAM"). The Government claims this examination was merely a "random" border search falling within established exceptions to the Fourth Amendment's warrant requirement. This assertion is demonstrably false.

The record reveals that CBP specifically targeted Defendant based on a 13-year-old conviction before he even disembarked from his cruise ship, deliberately misrepresented the nature of their search, and proceeded to conduct both an initial "manual" search and subsequent forensic analysis without reasonable suspicion or probable cause. These actions violated Defendant's Fourth Amendment rights in multiple ways:

First, the initial "manual" search—which required Defendant to surrender his PIN under duress, allowed agents to navigate through hundreds of browser tabs, applications, and access deleted files—was itself forensic in nature, as articulated by Judge Jill Pryor's compelling dissent in *United States v. Vergara*, 16-15059 (11th Cir. Mar. 15, 2018).

Second, the subsequent forensic extraction and analysis of the device's contents further violated the Fourth Amendment's prohibition against unreasonable searches. As Judge Pryor's dissent persuasively argues, in the post-*Riley* era, forensic searches of electronic devices at the border require a warrant supported by probable cause due to the unprecedented privacy interests at stake.

-1-

Third, even if this Court were to apply the more lenient "reasonable suspicion" standard for non-routine border searches, the Government cannot demonstrate that it possessed individualized, articulable facts supporting reasonable suspicion of *current* criminal activity, as required by this Circuit's precedent.

Finally, even if the Court were to find the search constitutional, the evidence obtained does not support the Transportation charge in Count One of the indictment, as the evidence fails to establish the required elements of knowing transportation under 18 U.S.C. § 2252A(a)(1).

This Motion demonstrates that the Government's actions cannot be justified under any applicable Fourth Amendment exception, requiring suppression of all evidence obtained from Defendant's iPhone and all fruits thereof.

## II. STATEMENT OF FACTS

Based on the discovery provided by the Government, the following facts can be established:

### A. Pre-Disembarkation Targeting

1.  On January 3, 2025, Defendant Artem Olegovich Alafyev arrived at Port Miami aboard the cruise ship MSC Divina, returning from a seven-day Caribbean cruise. (Government's Discovery Response, Case 1:25-cr-20013-RKA, Doc. 15, ALAFYEV_000001).

2.  Prior to Defendant's disembarkation, CBP officers accessed his National Crime Information Center ("NCIC") record, which revealed a 2011 conviction for possession of CSAM in the Southern District of New York. (Government's Discovery Response, ALAFYEV_000006). Defendant had completed his registration requirements in 2021, four years before the instant search. (Pretrial Services Report, ALAFYEV_000043, p. 3).

3.  CBP officers also accessed a 2018 Homeland Security Investigations ("HSI") report mentioning Defendant, though this report resulted in no charges or further investigation. (HSI Report, ALAFYEV_000013).

4.  According to the Government's discovery, HSI Special Agent Kenny Silva received a "duty call" regarding Defendant at approximately 10:30 AM on January 3, 2025, before Defendant had cleared customs. (HSI Report, ALAFYEV_000013). This timing suggests that Defendant was pre-selected for enhanced scrutiny before ever presenting himself for inspection.

5. The Government has repeatedly characterized this search as "random" in court filings and proceedings. (Government's Response to Defendant's Motion for Bail, ALAFYEV_000037).

**B. The Initial "Manual" Search**

6. Upon disembarkation, Defendant was directed to a secondary inspection area where CBP officers requested access to his Apple iPhone 16 Pro Max. (TECS Report, ALAFYEV_000003).

7. When Defendant initially refused to provide his PIN, CBP officers informed him that his device would be seized indefinitely if he did not comply. Under this coercion, Defendant unlocked the device. (HSI Report, ALAFYEV_000013-14).

8. Once unlocked, CBP officers conducted what they termed a "manual search" of the device. This search was extraordinarily invasive, including:

   o Examination of 496 open browser tabs

   o Navigation through multiple applications, including the VLC media player

   o Access to the device's "recently deleted" folder, which requires additional authentication steps beyond the initial unlock (TECS Report, ALAFYEV_000003; HSI Report, ALAFYEV_000013-14).

9. During this initial search, officers allegedly discovered five images that they suspected constituted CSAM in the "recently deleted" folder. (HSI Report, ALAFYEV_000014).

-4-

## C. Subsequent Forensic Analysis

10. Based on the results of the initial search, CBP detained Defendant's iPhone for further examination. (HSI Report, ALAFYEV_000014).

11. The device was transported to the HSI Computer Forensic Laboratory, where agents conducted a comprehensive forensic analysis using Cellebrite UFED and Oxygen Forensic Detective tools. (HSI Report, ALAFYEV_000017).

12. This forensic examination allegedly revealed additional CSAM beyond what was discovered during the initial search. (HSI Report, ALAFYEV_000017-18).

13. At no point did the Government obtain a search warrant for either the initial search or the subsequent forensic analysis. (Government's Response to Defendant's First Request for Production, ALAFYEV_000029).

## III. LEGAL STANDARD

## A. Fourth Amendment Protections Against Unreasonable Searches

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This fundamental constitutional protection generally requires law enforcement to obtain a warrant supported by probable cause before conducting a search. *Riley v. California*, 573 U.S. 373, 382 (2014). Evidence obtained in violation of the Fourth Amendment is subject to exclusion. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

**B. Border Search Exception and Its Limitations**

The Supreme Court has recognized that searches conducted at the international border constitute a narrow exception to the warrant requirement. *United States v. Ramsey*, 431 U.S. 606, 619 (1977). Under this exception, routine border searches may be conducted without a warrant or any individualized suspicion. *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985).

However, this exception is not without limits. The Supreme Court has held that non-routine, highly intrusive searches require at least reasonable suspicion of criminal activity. *Montoya de Hernandez*, 473 U.S. at 541; see also *United States v. Alfaro-Moncada*, 607 F.3d 720, 729 (11th Cir. 2010) (holding that reasonable suspicion is required for highly intrusive border searches).

---

**C. Cell Phone Searches and the Fourth Amendment**

The Supreme Court's landmark decision in *Riley v. California* recognized that cell phones present unique privacy concerns due to their "immense storage capacity" and the sensitive nature of the data they contain. 573 U.S. at 393. The Court held that the search incident to arrest exception does not apply to cell phones, requiring officers to obtain a warrant before searching such devices. *Id.* at 403.

While the Supreme Court has not directly addressed whether *Riley*'s warrant requirement extends to cell phone searches at the border, several circuits have grappled with this issue. The Eleventh Circuit, in *United States v. Vergara*, 884 F.3d 1309 (11th Cir. 2018), held in a split decision that forensic searches of electronic devices at the border do not require a warrant or probable cause. However, Judge Jill Pryor's powerful dissent argued that such searches should require a warrant

supported by probable cause, given the unprecedented privacy interests at stake. *Id.* at 1317-19 (Pryor, J., dissenting).

In a subsequent case, *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018), the Eleventh Circuit held that forensic searches of electronic devices at the border do not require any suspicion. However, this Circuit has not conclusively resolved whether truly invasive searches of cell phones at the border might require reasonable suspicion or a warrant, particularly in light of *Riley* and the growing recognition of digital privacy interests.

**D. Reasonable Suspicion Standard**

Even if the Court were to apply the reasonable suspicion standard rather than requiring a warrant, the Government must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion requires more than a mere hunch; it demands specific and articulable facts suggesting current criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Critically, the Eleventh Circuit has held that stale information cannot support reasonable suspicion. *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000) (noting that "stale information" cannot establish probable cause). The staleness inquiry depends on the "nature of the suspected crime, the duration of the activity, and the nature of the property to be seized." *Id.* at 1265.

### E. Transportation of CSAM - Legal Elements

To sustain a conviction for transportation of child pornography under 18 U.S.C. § 2252A(a)(1), the Government must prove beyond a reasonable doubt that the defendant knowingly transported or shipped child pornography using any means or facility of interstate or foreign commerce. This requires proof of: (1) knowing transportation; (2) of visual depictions; (3) in interstate or foreign commerce; (4) where the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct. *United States v. Smith*, 459 F.3d 1276, 1289 (11th Cir. 2006).

Critically, the transportation element requires proof of active conduct—not mere possession while traveling. *United States v. Winkler*, 639 F.3d 692, 699 (5th Cir. 2011) (distinguishing between transportation and possession during travel); see also *United States v. Navarro*, 145 F.3d 580, 592 (3d Cir. 1998) (requiring volitional movement of contraband).

---

## IV. ARGUMENT

### A. The Search Was Pretextual and Lacked Reasonable Suspicion

### 1. The "Random" Search Was in Fact a Targeted Investigation Based on Stale Information

The Government's assertion that Defendant was selected for a "random" border search is demonstrably false. The record reveals that CBP officers specifically targeted Defendant based on his 2011 conviction, which they had accessed through NCIC prior to his disembarkation. (ALAFYEV_000006). This pre-disembarkation identification mirrors the circumstances in

*Vergara*, where the defendant was pre-identified through a "lookout" list. *Vergara*, slip op. at 9 (Pryor, J., dissenting).

This Court should recognize the search as pretextual, as the Eleventh Circuit has done in similar circumstances. See *United States v. Smith*, 799 F.2d 704, 708 (11th Cir. 1986) (finding a search pretextual where the stated reason differed from the actual motivation). The Government's misrepresentation of the search as "random" undermines its credibility and suggests awareness that the actual basis for the search—a 13-year-old conviction—was constitutionally insufficient.

## 2. The Government Lacked Reasonable Suspicion of Current Criminal Activity

Even if this Court were to find that reasonable suspicion rather than a warrant is required for forensic searches of cell phones at the border, the Government cannot demonstrate that it possessed reasonable suspicion of *current* criminal activity. As Judge Pryor noted in her *Vergara* dissent, even if reasonable suspicion suffices for certain border searches, that suspicion must be current and particularized. *Vergara*, slip op. at 13 n.3.

Critically, this case is distinguishable from *Vergara* in a significant respect. As Judge Pryor noted in her dissent, "Vergara has not argued that the agents lacked reasonable suspicion to conduct a forensic search of his phones." *Vergara*, slip op. at 13 n.3 (Pryor, J., dissenting). In contrast, Defendant Alafyev directly challenges the existence of reasonable suspicion, arguing that agents relied solely on stale information—a 13-year-old conviction—to justify their invasive search. This distinction is crucial because it presents this Court with an issue not squarely addressed in *Vergara*: whether a decade-old conviction, without more, can establish reasonable suspicion for a forensic search at the border.

Defendant's 13-year-old conviction, for which he had completed all registration requirements four years prior to the search (ALAFYEV_000043), is precisely the kind of stale information that cannot support reasonable suspicion. The Eleventh Circuit has consistently held that stale information cannot establish probable cause or reasonable suspicion, particularly when not supplemented by current evidence. *Bervaldi*, 226 F.3d at 1264-65; see also *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (requiring "fresh" information to establish reasonable suspicion).

The Government has provided no evidence of any specific, articulable facts suggesting that Defendant was currently engaged in criminal activity. The mere fact of a prior conviction, without more, cannot justify an invasive search of a cell phone. See *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc) (holding that a prior conviction, standing alone, is insufficient to establish reasonable suspicion for a forensic search). To hold otherwise would effectively create a permanent exception to the Fourth Amendment for anyone with a prior conviction, a result plainly at odds with our constitutional tradition.

**B. The Initial "Manual" Search Was, in Fact, Forensic in Nature and Required a Warrant**

**1. Characteristics of a Forensic Search Under Judge Pryor's Framework**

Judge Pryor's dissent in *Vergara* provides a nuanced framework for distinguishing between routine manual searches and invasive forensic searches of electronic devices. As she notes, forensic searches involve "experts' work" of unlocking protected data and retrieving deleted material, which goes far beyond a cursory inspection. *Vergara*, slip op. at 15-16 (citing *Cotterman*, 709 F.3d at 957).

-10-

The dissent recognizes that forensic searches expose "a wealth of information beyond what a traveler would reasonably expect to carry across a national border," including "deleted files, browsing history, calendar entries, messaging applications, and GPS data." *Vergara*, slip op. at 15. These types of searches are qualitatively different from traditional border searches and implicate heightened privacy concerns.

**2. The Initial Search of Defendant's iPhone Was Forensic in Nature**

The initial search of Defendant's iPhone bears all the hallmarks of a forensic search under Judge Pryor's framework. CBP officers:

- Compelled Defendant to provide his PIN under duress, gaining access to protected data

- Navigated through 496 browser tabs, revealing his entire browsing history

- Accessed the "recently deleted" folder, which requires additional authentication steps

- Searched through multiple applications, including the VLC media player

(TECS Report, ALAFYEV_000003; HSI Report, ALAFYEV_000013-14).

This was not a cursory inspection of the device's surface-level contents, but a deep dive into protected and deleted data. The search of the "recently deleted" folder is particularly significant, as it parallels the forensic extraction of deleted files that Judge Pryor specifically identified as characteristic of forensic searches. *Vergara*, slip op. at 15-16.

As Judge Pryor observed, such searches expose "far more than the most exhaustive search of a house." *Vergara*, slip op. at 15 (quoting *Riley*, 573 U.S. at 396-97). The initial search of Defendant's iPhone was thus forensic in nature and implicated the full range of privacy concerns identified in *Riley* and in Judge Pryor's dissent.

-11-

### 3. Application of *Riley* to Border Searches of Cell Phones

The Supreme Court's decision in *Riley* recognized that cell phones contain "the privacies of life" and are fundamentally different from other items typically subject to border searches. 573 U.S. at 403. The Court held that the search incident to arrest exception does not apply to cell phones, requiring officers to obtain a warrant before searching such devices. *Id.*

Judge Pryor's dissent in *Vergara* persuasively argues that *Riley*'s rationale applies with equal force to border searches of cell phones. As she notes, "the privacy interests in cell phone data are the same at the border as they are anywhere else." *Vergara*, slip op. at 17. The fact that the search occurs at the border does not diminish the privacy interests at stake when officers access the vast troves of personal data contained on modern smartphones.

The initial search of Defendant's iPhone—which required bypassing security measures and accessing deleted files—implicated precisely the privacy concerns that led the Supreme Court to require a warrant in *Riley*. This Court should follow Judge Pryor's reasoning and hold that such invasive searches require a warrant, even at the border.

### C. The Subsequent Forensic Search Violated the Fourth Amendment

### 1. The Forensic Search Required a Warrant Under Judge Pryor's Analysis

Following the initial search, CBP detained Defendant's iPhone for a comprehensive forensic analysis. This analysis involved the use of specialized forensic tools to extract data from the device, including Cellebrite UFED and Oxygen Forensic Detective software. (HSI Report, ALAFYEV_000017).

Judge Pryor's dissent in *Vergara* argues forcefully that such forensic searches require a warrant supported by probable cause, even at the border. As she explains, the "extreme intrusion" of forensic searches outweighs the government's interests in conducting warrantless searches at the border. *Vergara*, slip op. at 17-21.

The forensic analysis of Defendant's iPhone extracted vast quantities of data beyond what would be discoverable through a traditional border search, including deleted files, metadata, and application data. This analysis was completely untethered from the traditional rationales for the border search exception—preventing the entry of contraband and unauthorized persons. *Vergara*, slip op. at 17-18.

Furthermore, as the Supreme Court noted in *Riley*, modern technology has significantly streamlined the warrant process. The Federal Rules of Criminal Procedure explicitly allow judges to issue warrants "by reliable electronic means." Fed. R. Crim. P. 4.1(b)(6)(C). The *Riley* Court observed that in some jurisdictions, officers can e-mail warrant requests to judges and receive responses in fewer than 15 minutes. 134 S. Ct. at 2493. Given these technological advancements, requiring CBP officers to obtain a warrant before conducting a forensic search of electronic devices would impose minimal burden on law enforcement while safeguarding Fourth Amendment protections.

As Judge Pryor notes, "obtaining a warrant for a forensic search is minimally burdensome" and would not significantly impede legitimate border security interests. *Vergara*, slip op. at 19. The Government has offered no compelling reason why it could not have obtained a warrant before conducting this invasive forensic analysis.

-13-

**2. Even Under Touset, the Government Lacked Reasonable Suspicion**

Even if this Court were to follow the majority opinion in *United States v. Touset*, 890 F.3d 1227, 1232 (11th Cir. 2018), which suggests that reasonable suspicion may be required for forensic searches of electronic devices at the border, the Government cannot demonstrate that it possessed reasonable suspicion.

As noted above, the Government's sole basis for searching Defendant's device was his 13-year-old conviction—precisely the kind of stale information that cannot support reasonable suspicion under Eleventh Circuit precedent. *Bervaldi*, 226 F.3d at 1264-65. The Government has offered no evidence of any recent suspicious activity or any other specific, articulable facts suggesting that Defendant was currently engaged in criminal activity.

Thus, even under the more lenient standard applied by the majority in *Touset*, the forensic search of Defendant's iPhone violated the Fourth Amendment.

**D. Suppression Is Warranted**

**1. All Evidence Obtained from the iPhone Must Be Suppressed as Fruit of the Poisonous Tree**

All evidence obtained from the unconstitutional searches of Defendant's iPhone must be suppressed under the fruit of the poisonous tree doctrine. *Wong Sun*, 371 U.S. at 488. This includes both the evidence discovered during the initial search and the additional evidence uncovered during the subsequent forensic analysis.

-14-

As Judge Pryor observed in her dissent, suppression serves the important purpose of deterring law enforcement from conducting unconstitutional searches. *Vergara*, slip op. at 21. This deterrent function is particularly important in the context of border searches, where CBP conducted over 30,000 electronic device searches in fiscal year 2017 alone. *Id.*

**2. The Good-Faith Exception Does Not Apply**

The good-faith exception to the exclusionary rule does not apply here because the officers could not have reasonably relied on the border search exception to justify their actions. As the Supreme Court held in *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987), the good-faith exception applies only when officers reasonably rely on legislative authorization, not when they make their own erroneous constitutional judgments.

---

The CBP officers in this case knew or should have known that they were targeting Defendant based on a stale conviction and misrepresenting the search as "random." These actions demonstrate a lack of good faith and suggest a deliberate attempt to circumvent Fourth Amendment protections.

**E. The Evidence Does Not Support Transportation Charges**

Even if this Court were to find the search constitutional, the evidence obtained does not support the Transportation charge in Count One of the indictment. Under 18 U.S.C. § 2252A(a)(1), the Government must prove that Defendant knowingly transported CSAM in interstate or foreign commerce.

The mere presence of CSAM on Defendant's phone while traveling is insufficient to establish the transportation element of the offense. Instead, the Government must prove active conduct—that Defendant knowingly moved the contraband across state or international boundaries. *United States v. Winkler*, 639 F.3d 692, 699 (5th Cir. 2011).

The evidence recovered from Defendant's phone shows, at most, possession of CSAM. The Government has presented no evidence that Defendant uploaded, downloaded, or otherwise transmitted the alleged contraband while traveling internationally. The images were located in the "recently deleted" folder (ALAFYEV_000014), suggesting they were not actively being transported or shared.

In *United States v. Navarro*, 145 F.3d 580, 592 (3d Cir. 1998), the Third Circuit distinguished between active transportation and passive possession during travel, holding that the transportation charge requires volitional movement of contraband. Here, there is no evidence of such volitional movement across international boundaries.

Accordingly, even if the Court were to deny the motion to suppress, it should dismiss Count One of the indictment for failure to state an offense.

## V. REQUEST FOR RELIEF

WHEREFORE, based on the foregoing, Defendant respectfully requests that this Honorable

Court:

1. Suppress all evidence obtained from the search of Defendant's iPhone, including all

   derivatives thereof;

2. Grant an evidentiary hearing to allow Defendant to establish the pretextual nature of the

   search, the coercive circumstances surrounding the PIN disclosure, and the scope of the

   initial and subsequent searches;

3. Dismiss Count One of the indictment charging Defendant with Transportation of CSAM

   under 18 U.S.C. § 2252A(a)(1); and

4. Grant such other and further relief as this Court deems just and proper.

   **DATED:** April 8, 2025.

                                        Respectfully submitted,

                                        **Law Offices of Robert Bond**

                          By: _/s/ Robert Bond_____
                                 **Robert Bond, Esq.**
                                 PA Bar number: 308371
                                 Co-Counsel for Defendant
                                 Admitted Pro Hac Vice
                                 11880 Bustleton Avenue, Suite 206
                                 Philadelphia, PA 19116
                                 Telephone: (215) 240 7565
                                 Email: Rbond@phillylawcenter.com

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 88.9(a), undersigned counsel conferred with Assistant United States Attorney Angela Benoit, who indicated that the Government objects to the relief sought in this Motion.

**Donet, McMillan & Trontz, P.A.**

By:  /s/ David A. Donet, Jr.
  **David A. Donet, Jr., Esq.**
  Florida Bar No.: 128910
  Attorney for Defendant

## REQUEST FOR A HEARING

In accordance with Local Rule 88.9(a), Defendant respectfully requests that the Court hear oral argument on Defendant's Motion to Suppress.

Defendant submits that thirty (30) minutes per side, for a total of sixty (60) minutes, is sufficient for the parties to argue the issues presented.

A hearing would allow the Defendant to establish the pretextual nature of the search, the coercive circumstances surrounding the PIN disclosure, and the scope of the initial and subsequent searches.

Defendant believes that oral argument would further the Court's understanding of the grounds for dismissal set forth in this Motion and will enable the Defendant to address any questions and/or concerns that the Court may have prior to ruling.

Additionally, Defendant would argue that a defendant is entitled to an evidentiary hearing on a motion to suppress if the defendant alleges facts that, if proved, would require the grant of relief. *United States v. Torres*, No. 22-12996, 2024 U.S. App. LEXIS 6475, at *5 (11th Cir. Mar. 19, 2024) (Citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). The

[Continued on next page]

allegations in this Motion, if proved, would require relief.

**Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.
**David A. Donet, Jr., Esq.**
Florida Bar No.: 128910
Attorney for Defendant

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 8, 2025, undersigned counsel electronically filed

the foregoing Defendant's Motion to Suppress with the Clerk of the Court using CM/ECF, which

will send a Notice of Electronic Filing (NEF) to all counsel of record.

**Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.
**David A. Donet, Jr., Esq.**
Florida Bar No.: 128910
Attorney for Defendant
100 Almeria Avenue, Suite 230
Coral Gables, Florida 33134
Telephone: 305-444-0030
Email: donet@dmtlaw.com
Email: paralegals@dmtlaw.com