UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cr-20013-RKA

UNITED STATES OF AMERICA,

v.

ARTEM OLEGOVICH ALAFYEV,

Defendant.
_____/

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO SUPPRESS EVIDENCE**

**COMES NOW**, Defendant Artem Olegovich Alafyev ("Defendant"), by and through undersigned counsel, and hereby files this Reply to the Government's Response in Opposition to Defendant's Motion to Suppress Evidence (DE 38), and states as follows:

**I.      INTRODUCTION**

The Government's Response fundamentally misrepresents Eleventh Circuit precedent by asserting that the reasonable suspicion question for forensic border searches is settled, when it plainly is not. The Government selectively cites binding precedent while deliberately omitting crucial qualifications that directly support Defendant's position. This Reply will demonstrate that: (1) the Eleventh Circuit has expressly reserved the question of whether reasonable suspicion is required for forensic searches of electronic devices at the border; (2) even assuming, *arguendo*, that reasonable suspicion rather than a warrant is required, the Government lacked reasonable suspicion based on a 13-year-old conviction; (3) the Government's mischaracterization of the search as "random" when it was targeted demonstrates pretext and bad faith; and (4) the Government's citations contain material omissions that undermine the

1

credibility of their legal analysis.

**II.     THE REASONABLE SUSPICION QUESTION REMAINS OPEN IN <u>THE ELEVENTH CIRCUIT</u>**

      **A.     <u>The *Vergara* Qualification</u>**

The Government repeatedly asserts that the Eleventh Circuit has "repeatedly and unequivocally established" that forensic searches of electronic devices at the border require no suspicion. (DE 38 at 1). This claim selectively quotes from precedent while deliberately omitting the most critical sentence from *United States v. Vergara*, which expressly reserves the reasonable suspicion question:

> The highest standard for a search is reasonable suspicion, see *Vega-Barvo*, 729 F.2d at 1344–45, and Vergara has not challenged the finding of the district court that reasonable suspicion existed for the searches of his phones. **So we need not—and do not—address the questions whether reasonable suspicion was required for the searches or whether reasonable suspicion existed.**

*United States v. Vergara*, 884 F.3d 1309, 1313 (11th Cir. 2018) (emphasis added).

This explicit reservation is dispositive because it demonstrates that the Eleventh Circuit has never decided whether reasonable suspicion is required for forensic searches at the border when properly challenged. Unlike Vergara, who "has not challenged the finding of the district court that reasonable suspicion existed," *Id.*, Defendant directly challenges whether the Government had reasonable suspicion based on a stale 13-year-old conviction for which he completed all registration requirements four years prior to the search. (DE 33 at 9-12).

The Government's omission of this crucial qualification from *Vergara* constitutes a material misrepresentation of controlling precedent. The reasonable suspicion question is not settled law in the Eleventh Circuit; rather, it presents a question of first impression that this Court must address.

2

      B.    *Touset* **Does Not Foreclose Defendant's Challenge**

The Government also relies heavily on *United States v. Touset*, 890 F.3d 1227 (11th Cir. 2018), which states that "no suspicion is necessary to search electronic devices at the border." *Id.* at 1229. However, *Touset* does not address the specific circumstances presented in this case:

1. The defendant in *Touset* was actively under investigation based on recent suspicious activity, not targeted solely because of a decade-old conviction. *Id.* at 1230-31.

2. *Touset* did not consider whether a search could be pretextual when officers mischaracterize it as "random" despite pre-selecting the target based on stale information. (DE 33 at 9-10).

3. *Touset* did not address whether accessing deleted files and password-protected areas during an initial "manual" search effectively transforms it into a forensic search. (DE 33 at 10-12).

Importantly, *Touset* did not overrule *Vergara's* express reservation of the reasonable suspicion question, as the panel in *Touset* was bound by the prior panel decision in *Vergara*. See *United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding."). The *Touset* panel was constrained to follow *Vergara's* qualified holding that included an express reservation on the reasonable suspicion question.

      C.    *Pulido* **Does Not Address Staleness-Based Challenges**

The Government cites *United States v. Pulido*, 2025 WL 1036987 (11th Cir. 2025), without providing a pinpoint citation, to support their claim that border searches of electronic devices require no suspicion. While *Pulido* addresses border searches, it fails to consider the specific challenge raised here—whether a stale conviction can establish reasonable suspicion. The absence of a pinpoint citation undermines the persuasiveness of the Government's reliance on *Pulido*, and further demonstrates the infirmity of their argument.

3

Moreover, the Government's persistent failure to provide pinpoint citations to relevant portions of case law—a fundamental requirement under Rule 7.1(a) of the Southern District of Florida's Local Rules—suggests an attempt to obscure rather than elucidate the relevant legal principles.

### III.     EVEN UNDER A REASONABLE SUSPICION STANDARD, THIS <u>SEARCH FAILS</u>

Even if this Court were to find that forensic searches at the border require only reasonable suspicion rather than a warrant, the Government lacked reasonable suspicion in this case. The sole basis for the search was Defendant's 2011 conviction, for which he had completed all registration requirements in 2021, four years before the search. (DE 33 at 3, citing Pretrial Services Report, ALAFYEV_000043, p. 3).

The Eleventh Circuit has consistently held that stale information cannot support reasonable suspicion. In *United States v. Bervaldi*, 226 F.3d 1256 (11th Cir. 2000), the court held that "stale information cannot establish probable cause." *Id.* at 1264-65. This principle applies with equal force to reasonable suspicion. See *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (requiring "fresh" information to establish reasonable suspicion).

The Ninth Circuit, in *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013), explicitly addressed whether a prior conviction alone can establish reasonable suspicion for a border search of an electronic device. The court held that "a prior conviction, by itself, is not enough to give rise to reasonable suspicion." *Id.* at 968. While not binding, this reasoning is persuasive and aligns with Eleventh Circuit precedent on staleness.

The Government has provided no evidence of any specific, articulable facts suggesting that Defendant was currently engaged in criminal activity. The mere fact of a prior conviction, without more, cannot justify an invasive search of a cell phone. To hold otherwise would

4

effectively create a permanent exception to the Fourth Amendment for anyone with a prior conviction, a result plainly at odds with our constitutional tradition.

## IV.     THE GOVERNMENT'S CHARACTERIZATION OF THE SEARCH AS "RANDOM" DEMONSTRATES PRETEXT AND BAD FAITH

The Government's position contains a critical internal contradiction that undermines its credibility. In prior court filings, the Government characterized the search as "random." (DE 33 at 10, citing Government's Response to Defendant's Motion for Bail, ALAFYEV_000037). Yet, in its Response to the Motion to Suppress, the Government admits that "CBP referred the Defendant, who has a prior conviction related to the possession of child sexual abuse material ('CSAM') to secondary screening." (DE 38 at 2).

This admission confirms that the search was not random, but targeted based on Defendant's prior conviction. The Eleventh Circuit has invalidated pretextual searches where the stated reason differed from the actual motivation. *United States v. Smith*, 799 F.2d 704, 708 (11th Cir. 1986) (finding a search pretextual where the stated reason differed from the actual motivation).

Moreover, the Government's misrepresentation suggests awareness that the actual basis for the search—a 13-year-old conviction—was constitutionally insufficient. This Court should not countenance such tactics, which undermine the integrity of the judicial process. See *Berger v. United States*, 295 U.S. 78, 88 (1935) (noting that a prosecutor's interest "is not that it shall win a case, but that justice shall be done").

## V.     THE INITIAL "MANUAL" SEARCH WAS FORENSIC IN NATURE AND REQUIRED A WARRANT

The Government characterizes the initial examination of Defendant's iPhone as a "basic manual review" (DE 38 at 2), but the facts demonstrate it was forensic in nature:

1. CBP officers accessed 496 browser tabs
2. They navigated through multiple applications, including the VLC media player
3. They accessed the "recently deleted" folder, which requires additional authentication steps beyond the initial unlock

(DE 33 at 4-5, citing TECS Report, ALAFYEV_000003; HSI Report, ALAFYEV_000013-14).

This level of intrusion parallels what Judge Pryor described as characteristic of forensic searches in her *Vergara* dissent—namely, "unlocking protected data" and accessing "deleted files." *Vergara*, 884 F.3d at 1317-18 (Pryor, J., dissenting). The search of the "recently deleted" folder is particularly significant, as it required bypassing additional security measures and accessing data that Defendant had explicitly marked for deletion.

As Judge Pryor noted, such searches expose "far more than the most exhaustive search of a house." *Id.* at 1315 (quoting *Riley v. California*, 573 U.S. 373, 396-97 (2014)). The initial search of Defendant's iPhone was thus forensic in nature and implicated the full range of privacy concerns identified in *Riley* and in Judge Pryor's dissent.

The Supreme Court's decision in *Riley* recognized that cell phones present unique privacy concerns due to their "immense storage capacity" and the sensitive nature of the data they contain. 573 U.S. at 393. The Court held that the search incident to arrest exception does not apply to cell phones, requiring officers to obtain a warrant before searching such devices. *Id.* at 403.

Judge Pryor's dissent in *Vergara* persuasively argues that *Riley's* rationale applies with equal force to border searches of cell phones. As she notes, "the privacy interests in cell phone data are the same at the border as they are anywhere else." *Vergara*, 884 F.3d at 1317 (Pryor, J., dissenting). The fact that the search occurs at the border does not diminish the privacy interests at stake when officers access the vast troves of personal data contained on modern smartphones.

## VI. <u>THE GOOD FAITH EXCEPTION DOES NOT APPLY</u>

The Government argues that even if the Court were to find the search unconstitutional, the good faith exception would apply. (DE 38 at 6-7). This argument fails for several reasons:

1. The good faith exception applies only when officers reasonably rely on binding precedent. *Davis v. United States*, 564 U.S. 229, 241 (2011). Here, as demonstrated above, no binding precedent definitively establishes that forensic searches of electronic devices at the border require no suspicion when the defendant challenges reasonable suspicion.

2. The Government's misrepresentation of the search as "random" when it was clearly targeted undermines any claim to good faith. Officers who misrepresent the nature of their actions cannot claim good faith. *United States v. Leon*, 468 U.S. 897, 922-23 (1984) (good faith exception does not apply where officers' conduct is dishonest).

3. The coercive tactics used to obtain Defendant's PIN—threatening indefinite device seizure (DE 33 at 4)—further demonstrate a lack of good faith. See *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987) (good faith exception applies only to objectively reasonable reliance).

As Judge Pryor observed in his dissent, suppression serves the important purpose of deterring law enforcement from conducting unconstitutional searches. *Vergara*, 884 F.3d at 1321 (Pryor, J., dissenting). This deterrent function is particularly important in the context of border searches, where CBP conducts thousands of electronic device searches annually. *Id.*

## VII. <u>THE EVIDENCE DOES NOT SUPPORT TRANSPORTATION CHARGES</u>

Independent of this Court's ruling on the suppression issue, the evidence obtained does not support the Transportation charge in Count One of the indictment. Under 18 U.S.C. § 2252A(a)(1), the Government must prove that Defendant knowingly transported CSAM in interstate or foreign commerce.

The mere presence of CSAM on Defendant's phone while traveling is insufficient to establish the transportation element of the offense. Instead, the Government must prove active conduct—that Defendant knowingly moved the contraband across state or international

boundaries. *United States v. Winkler*, 639 F.3d 692, 699 (5th Cir. 2011) (distinguishing between transportation and possession during travel).

In *United States v. Navarro*, 145 F.3d 580 (3d Cir. 1998), the Third Circuit distinguished between active transportation and passive possession during travel, holding that the transportation charge requires volitional movement of contraband. *Id.* at 592. Here, there is no evidence of such volitional movement across international boundaries.

The fact that the images were located in the "recently deleted" folder (DE 33 at 5, citing HSI Report, ALAFYEV_000014) suggests they were not actively being transported or shared. This further undermines any claim that Defendant was knowingly transporting CSAM.

The Government's Response fails to address this substantive challenge to Count One, focusing instead on procedural barriers to dismissal. (DE 38 at 7-8). This non-response suggests weakness in the Government's position and reinforces our argument that Count One should be dismissed.

**VIII.  REQUEST FOR AN EVIDENTIARY HEARING**

Defendant renews his request for an evidentiary hearing to establish the pretextual nature of the search, the coercive circumstances surrounding the PIN disclosure, and the forensic nature of the initial search. A defendant is entitled to an evidentiary hearing on a motion to suppress if the defendant alleges facts that, if proved, would require the grant of relief. *United States v. Torres*, No. 22-12996, 2024 U.S. App. LEXIS 6475, at *5 (11th Cir. Mar. 19, 2024) (citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)).

The allegations in Defendant's Motion, if proved, would require suppression. An evidentiary hearing would allow Defendant to question CBP officers about:

1. Their decision to target Defendant based on a 13-year-old conviction

2. The Government's mischaracterization of the search as "random" in court filings

3. The coercive tactics used to obtain Defendant's PIN

4. The scope and nature of the initial search, including the steps taken to access the "recently deleted" folder

This testimony is critical to establishing the pretextual nature of the search and the lack of reasonable suspicion.

## IX.    CONCLUSION

Therefore, the Government's Response misrepresents Eleventh Circuit precedent by claiming that the reasonable suspicion question for forensic searches at the border is settled, when *Vergara* explicitly reserves this question. The Government's selective citation of precedent, combined with its mischaracterization of the search as "random" when it was clearly targeted, undermines its credibility and suggests bad faith.

Even if this Court were to find that reasonable suspicion rather than a warrant is required for forensic searches at the border, the Government lacked reasonable suspicion based solely on a 13-year-old conviction for which Defendant had completed all registration requirements. The initial "manual" search was forensic in nature, requiring additional security steps to access deleted files, and thus implicated the full range of privacy concerns identified in *Riley* and Judge Pryor's dissent.

For these reasons, and those stated in Defendant's Motion to Suppress, the Court should suppress all evidence obtained from the search of Defendant's iPhone and dismiss Count One of the indictment.

Therefore, Defendant respectfully requests that this Honorable Court:

1. Grant an evidentiary hearing to allow Defendant to establish the pretextual nature of the search, the coercive circumstances surrounding the PIN disclosure, and the scope of the initial and subsequent searches;

2. Suppress all evidence obtained from the search of Defendant's iPhone, including all derivatives thereof;

3. Dismiss Count One of the indictment charging Defendant with Transportation of CSAM under 18 U.S.C. § 2252A(a)(1); and

4. Grant such other and further relief as this Court deems just and proper.

DATED: May 2, 2025.

Respectfully submitted,
Law Offices of Robert Bond
By: /s/ Robert Bond
Robert Bond, Esq.
PA Bar number: 308371
Co-Counsel for Defendant
Admitted Pro Hac Vice
11880 Bustleton Avenue, Suite 206
Philadelphia, PA 19116
Telephone: (215) 240-7565
Email: Rbond@phillylawcenter.com

[Certificate of Service on next page]

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 5, 2025, undersigned counsel electronically filed the foregoing Defendant's Reply to Government's Response in Opposition to Motion to Suppress with the Clerk of the Court using CM/ECF, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

                                        **Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.
**David A. Donet, Jr., Esq.**
Florida Bar No.: 128910
Attorney for Defendant
100 Almeria Avenue, Suite 230
Coral Gables, Florida 33134
Telephone: 305-444-0030
Email: donet@dmtlaw.com
Email: paralegals@dmtlaw.com