**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-CR-20013-RKA**

UNITED STATES OF AMERICA,

v.

ARTEM OLEGOVICH ALAFYEV,

Defendant.
_______________________________________/

**DEFENDANT'S COMPREHENSIVE MOTION TO EXCLUDE EXPERT TESTIMONY OF SPECIAL AGENT ANTHONY BLACKMAN AND ANALYST CHRISTINA LOUGHRIN AND MEMORANDUM OF LAW IN SUPPORT**

**COMES NOW** the Defendant, ARTEM OLEGOVICH ALAFYEV, by and through undersigned counsel, pursuant to Federal Rules of Evidence 104(a), 702, 703, and 705, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and respectfully moves this Honorable Court to exclude the testimony of Special Agent Anthony Blackman and Criminal Analyst Christina Loughrin as expert witnesses. In support of this Motion, Defendant submits the following memorandum of law.

## I. INTRODUCTION

The Government seeks to qualify Special Agent Anthony Blackman and Computer Forensics Analyst Christina Loughrin as expert witnesses to testify about digital forensics, data extraction, and analysis of electronic devices.

However, both individuals are mere government agents who lack the specialized knowledge, skill, experience, training, or education necessary to qualify as experts under Federal Rule of Evidence 702. The Government has failed to establish that either witness possesses the requisite scientific, technical, or specialized knowledge that would assist the trier of fact to understand the evidence or determine facts at issue in this case.

On May 6, 2025, the Government filed its Notice of Intent to Introduce Expert Testimony, identifying Special Agent Anthony Blackman and Computer Forensics Analyst Christina Loughrin as proposed expert witnesses. The Government indicated that these witnesses would testify about digital forensics, data extraction, and analysis of electronic devices.

According to his *curriculum vitae*, Special Agent Blackman has been employed with the Department of Homeland Security since May 2003 and as a Criminal Investigator since May 2006. He was selected as a Computer Forensic Agent (CFA) in December 2022, meaning he has less than three years of experience in digital forensics. His qualifications include a CompTIA A+ certification (an entry-level IT certification) and various short-duration training courses provided by his employer.

Computer Forensics Analyst Loughrin has worked as a Computer Forensic Analyst since July 2014. Her curriculum vitae indicates that she has an Associate's

Degree in Digital Forensics that is still "pending" and possesses only basic CompTIA A+ certifications.

Neither proposed witness has authored any publications in the field of digital forensics, and neither has previously testified as an expert in any proceeding. Furthermore, the Government has failed to establish any proven methodology regarding what can and cannot be recovered from digital devices, a critical requirement under *Daubert*.

## II. LEGAL STANDARD

### A. Federal Rule of Evidence 702 and Expert Qualification Requirements

Federal Rule of Evidence 702 permits expert testimony only when:

1. The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;

2. The testimony is based on sufficient facts or data;

3. The testimony is the product of reliable principles and methods; and

4. The expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court established that trial judges must serve as gatekeepers to ensure that purported expert testimony is both relevant and reliable. The Court identified several factors to determine reliability, including whether the expert's technique or theory: * Has been tested * Has been subject to peer review and publication * Has

a known or potential error rate * Has standards controlling its operation * Is generally accepted within the relevant scientific community

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended the *Daubert* framework to all expert testimony, including technical and specialized knowledge. The Court emphasized that the trial judge's gatekeeping obligation applies to all expert testimony, not just scientific testimony.

As the Eleventh Circuit explained in *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004), "the proponent of the testimony must show that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* at 1260.

### B. The Heightened Scrutiny Required for Law Enforcement Officer Testimony

The Eleventh Circuit has emphasized that law enforcement officers are not automatically qualified as experts merely by virtue of their employment. In *United States v. Lankford*, 955 F.2d 1545 (11th Cir. 1992), the court noted that "[i]t is well established that expert testimony generally is admissible if it will assist the trier of fact to understand evidence or to determine a fact in issue. However, such

testimony is not admissible if it will serve primarily to unfairly prejudice the defendant." *Id.* at 1551.

In *United States v. Esquivel-Ortega*, 484 F.3d 1221 (11th Cir. 2007), the Eleventh Circuit cautioned that "law enforcement officers may testify as experts concerning the methods and techniques employed in an area of criminal activity" only when they have "specialized knowledge beyond that of the average lay person as a result of experience or training." *Id.* at 1225-26.

Similarly, in *United States v. Garcia*, a case involving a DEA agent, the Eleventh Circuit clarified that "to qualify as an expert, not only must the witness be qualified, but also the area of his testimony." 447 F.3d 1327, 1330 (11th Cir. 2006). The court emphasized that "[a]n agent's uncorroborated, personal opinion that a defendant is guilty in various respects is not the type of expert testimony contemplated by Rule 702." *Id.* at 1337-38.

### C. **Digital Forensics Requires Validated Methodologies**

Digital forensics, perhaps more than many other fields, demands adherence to validated methodologies due to its technical complexity and the potential for error. In *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006), the court emphasized that testimony about data recovery requires "specialized knowledge of computers and the particular forensic software programs." *Id.* at 926.

The National Institute of Standards and Technology (NIST) has established that digital forensic methodologies must be validated through rigorous testing and peer review. See NIST Special Publication 800-86, "Guide to Integrating Forensic Techniques into Incident Response" (2006). Without adherence to such validated methodologies, testimony about data recovery lacks the reliability required by *Daubert*.

A critical factor under *Daubert* is the known or potential error rate of the methodology employed. 509 U.S. at 594. In *United States v. Saelee*, 162 F. Supp. 2d 1097 (D. Alaska 2001), the court excluded expert testimony where the government failed to establish error rates for the methodology employed, noting that "the absence of known error rates strongly suggests a lack of reliability." *Id.* at 1103.

## III.   ANALYSIS OF THE PROPOSED EXPERTS' TRAINING AND QUALIFICATIONS

Based on the CVs of Special Agent Anthony Blackman and Computer Forensics Analyst Christina Loughrin, the following breakdown of their training courses demonstrates why these qualifications fall short of establishing them as experts in digital forensics.

### A.   Special Agent Anthony Blackman's Training and Qualifications

#### 1.   *Training Breakdown:*

a. CompTIA A+ Certification

- Duration: Typically requires 1-3 months of part-time study
- Content: Basic IT knowledge covering computer hardware, software troubleshooting, and basic networking
- Expertise Level: Entry-level IT support certification, not forensics-specific
- Significance: This is considered a starting point for IT careers, not a credential for forensic analysis

b. Computer Forensic Agent (CFA) Certification from DHS/HIS

- Duration: Based on the CV, appears to be an internal departmental designation rather than an independent professional certification
- Content: Internal agency training, likely focusing on agency-specific protocols
- Expertise Level: Agency-specific operational training, not comparable to independent forensic certifications
- Significance: Internal designations do not meet industry standards for expert qualification

c. Cellebrite Training (October 2023)

- Duration: Typically 2-5 days
- Content: Software-specific training on how to operate the Cellebrite tool
- Expertise Level: Tool-specific operational knowledge, not comprehensive forensic methodology
- Significance: Knowing how to operate a specific tool does not constitute expertise in the field

d. Network Intrusion Training (August 2024)

- Duration: 5 days (08/26/2024-08/30/2024)
- Content: First responder techniques for network intrusions
- Expertise Level: Introductory level for specific scenario response
- Significance: This brief course offers very limited exposure to a complex subject

e. INTELLA Training (November 2023)

- Duration: 3 days (11/13/2023-11/15/2023)

- Content: E-Discovery software operation
- Expertise Level: Basic software operation, not forensic principles
- Significance: Another tool-specific training, not foundational knowledge

f. Mac Forensic 101/201 (August 2023)
- Duration: 10 days (08/14/2023-08/25/2023)
- Content: Basic and intermediate Apple system forensics
- Expertise Level: Introductory to intermediate, software-specific
- Significance: While more substantial than some other courses, still insufficient for expert status

g. Drone Forensic/Maritime GPS Forensic (April 2025)
- Duration: 4 days (04/22/2025-04/25/2025)
- Content: Specialized device forensics
- Expertise Level: Niche application, not comprehensive forensic knowledge
- Significance: Very specialized and brief training

**B. Christina Loughrin's Training and Qualifications**

*1. **Training Breakdown:***

a. CompTIA A+ Certifications

- Duration: Typically requires 1-3 months of part-time study
- Content: Basic IT knowledge (same as Blackman)
- Expertise Level: Entry-level IT support
- Significance: Not forensics-specific or advanced

b. College Courses from Champlain College

- Duration: Individual courses typically span a semester (3-4 months each)
- Content: Introduction to Computer Systems, Networking Fundamentals/Anti-Forensics, Cyber Crime Forensics, Operating System Forensics, Mobile Forensics
- Expertise Level: Undergraduate coursework, not completed degree

    - Significance: Taking individual courses without completing a degree program indicates incomplete training

c. Associate Degree in Digital Forensics (Pending)

- Duration: Typically a 2-year program
- Content: Foundational digital forensics curriculum
- Expertise Level: Undergraduate, entry-level
- Significance: The fact that this degree remains "pending" after years of employment indicates incomplete formal education

d. Cellebrite Training (December 2017)

- Duration: 3 days
- Content: Mobile device extraction using specific software
- Expertise Level: Tool-specific operation
- Significance: Brief vendor training from over 7 years ago, without evidence of updates

e. Forensic Explorer Training (December 2017)

- Duration: 2 days
- Content: Software operation
- Expertise Level: Tool-specific training
- Significance: Another brief vendor course from over 7 years ago

f. Macintosh Forensics Training (March 2017)

- Duration: 2 weeks
- Content: Mac-specific forensic techniques
- Expertise Level: Platform-specific training
- Significance: More substantial than some courses, but still focused on a specific platform rather than comprehensive forensic methodology

g. National White-Collar Crime Center (NW3C) Online Courses

- Duration: Most courses 1-3 hours each
- Content: Various introductory topics (Basic Computer Skills, Cyber Investigations, Introduction to Cell Phone Investigations, etc.)
- Expertise Level: Introductory, awareness-level

      - Significance: These extremely brief online courses provide only superficial knowledge

h. Basic Computer Evidence Recovery Training (BCERT)

- Duration: 6 weeks
- Content: Basic evidence recovery techniques
- Expertise Level: Foundational agency training
- Significance: While longer than other courses, still represents basic rather than expert-level training

## C. **Why These Qualifications Fall Short of Expert Status**

1. No Advanced Degrees: Neither individual possesses an advanced degree in computer science, digital forensics, or a related field. Loughrin's associate degree remains incomplete after years in the field.

2. Lack of Independent Professional Certifications: Neither possesses recognized professional certifications such as:

   - Certified Computer Examiner (CCE)
   - EnCase Certified Examiner (EnCE)
   - GIAC Certified Forensic Analyst (GCFA)
   - Certified Forensic Computer Examiner (CFCE)
   - AccessData Certified Examiner (ACE)

3. Short-Duration Training: Most of their training consists of brief courses ranging from a few hours to a few days, insufficient to develop expertise in a complex technical field.

4. Tool-Specific Rather than Methodological: Their training focuses primarily on how to operate specific software tools rather than understanding the scientific principles and methodological rigor of digital forensics.

5. No Scholarly Contributions: Neither has published peer-reviewed research or contributed to the development of the field.

6. No Prior Expert Qualification: Neither has been qualified as an expert witness in any prior proceedings.

7.  No Teaching Experience: Neither has taught courses in digital forensics, which would demonstrate a deeper understanding of the subject matter.

8.  Training Currency Issues: Some of Loughrin's key training dates back to 2017, raising questions about currency with rapidly evolving technology.

9.  Internal Agency Designations: Many of their credentials are internal agency designations rather than independent professional certifications.

10. No Demonstrated Error Rate Knowledge: Their training does not appear to include understanding of error rates and limitations of forensic tools, which is essential for expert testimony under *Daubert* standards.

**D.  Contrast with Qualified Experts in Digital Forensics**

In contrast, qualified experts in digital forensics typically have:

1.  Advanced degrees (Master's or Ph.D.) in computer science, digital forensics, or related fields

2.  Multiple independent professional certifications from recognized organizations

3.  Peer-reviewed publications in forensic journals

4.  Teaching experience at accredited institutions

5.  Prior qualification as expert witnesses

6.  Comprehensive understanding of forensic methodologies, not just tool operation

7.  Knowledge of error rates and limitations of forensic techniques

The training and qualifications of both Blackman and Loughrin reflect

operational training for government agents rather than the comprehensive

education, independent certification, and demonstrated expertise required for expert witness qualification.

## IV. ARGUMENT

### A. The Government Has Failed to Establish that the Proposed Witnesses are Qualified as Experts in Digital Forensics

#### *1. Special Agent Anthony Blackman Lacks the Qualifications to Testify as an Expert*

Special Agent Blackman's limited experience and training fall far short of the specialized knowledge required to qualify as an expert in digital forensics under Rule 702. His curriculum vitae reveals the following deficiencies:

First, Agent Blackman has minimal experience in the field of digital forensics. He has served as a Computer Forensic Agent only since December 2022—a mere two and a half years of experience in digital forensics. Prior to that, he worked as a general criminal investigator with the Department of Homeland Security. This limited experience is insufficient to qualify him as an expert with "scientific, technical, or other specialized knowledge" as required by Rule 702.

Second, Agent Blackman lacks advanced degrees or formal education in computer science, digital forensics, information technology, or related fields. His sole formal credential is a CompTIA A+ certification, which is an entry-level certification for IT technicians that covers basic computer hardware and software knowledge—not a qualification for forensic analysis experts. As the Eleventh

Circuit has held, "the witness must have such knowledge or experience in the field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *United States v. Barton*, 909 F.2d 994, 999-1000 (7th Cir. 1990)). A basic IT support certification does not provide the specialized knowledge necessary to aid the jury in evaluating digital forensic evidence.

Third, Agent Blackman has never authored any peer-reviewed publications, research, or scholarly contributions to the field. He has never taught courses on the subject and has never been qualified as an expert witness in any prior proceedings. These factors are significant in assessing expert qualifications. See *United States v. Paul*, 175 F.3d 906, 911 (11th Cir. 1999) (considering an expert's publication history in assessing qualifications).

Fourth, Agent Blackman's "certification" as a Computer Forensic Agent was provided by his own employer (DHS/HSI), rather than by an independent, recognized professional organization in the field of digital forensics. This self-certification does not carry the credibility or rigor of independent professional certifications such as the GIAC Certified Forensic Analyst (GCFA), Certified Computer Examiner (CCE), or EnCase Certified Examiner (EnCE)—none of which Agent Blackman possesses.

Finally, Agent Blackman's training consists primarily of short-duration courses provided by his employer or vendors of forensic software, rather than comprehensive education in the principles and methodologies of digital forensics. Such training may qualify him to operate specific software tools, but it does not provide the depth of understanding required to qualify as an expert in the broader field of digital forensics.

In *United States v. Azmat*, 805 F.3d 1018 (11th Cir. 2015), the Eleventh Circuit upheld the exclusion of a proposed expert witness who lacked sufficient qualifications, noting that the witness had "no specialized knowledge, skill, experience, training, or education" in the relevant field. *Id.* at 1042. Similarly, Agent Blackman lacks the specialized knowledge and experience necessary to qualify as an expert in digital forensics.

#### ***2. Computer Forensics Analyst Christina Loughrin Lacks the Qualifications to Testify as an Expert***

Similarly, Analyst Loughrin's qualifications do not rise to the level of expertise required for expert testimony. While she has worked as a Computer Forensics Analyst since July 2014, her curriculum vitae reveals significant gaps in specialized education and recognition in the field:

First, Analyst Loughrin lacks completed formal education in digital forensics. Her curriculum vitae indicates that her Associate's Degree in Digital

Forensics is still "pending," suggesting that she has not even completed a two-year degree program in the field.

Second, like Agent Blackman, Analyst Loughrin possesses only basic CompTIA A+ certifications, which are entry-level IT certifications for tech support personnel—not for forensic analysts. She lacks advanced, specialized certifications in digital forensics from recognized independent organizations.

Third, Analyst Loughrin has no peer-reviewed publications or scholarly contributions to the field. She has no history of testifying as an expert in prior proceedings and no teaching experience in digital forensics. These factors significantly undermine her claim to specialized expertise. See *Frazier*, 387 F.3d at 1261 (considering an expert's professional qualifications in assessing expertise).

Fourth, Analyst Loughrin's experience is primarily as a government employee who has received employer-provided training. Such experience, without more substantial credentials, falls short of the specialized knowledge required for expert testimony under Rule 702.

In *United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005), the Eleventh Circuit emphasized that "the rules relating to expert testimony seek to assure that the expert in question has sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Id.* at 1269. Analyst Loughrin's limited qualifications do not demonstrate such "sufficient specialized knowledge."

## B. The Government Has Failed to Establish that the Proposed Testimony Meets Reliability Standards Under *Daubert*

Even if the Court were to find that the proposed witnesses have some degree of specialized knowledge, their testimony still fails to meet the reliability requirements established in *Daubert* and its progeny.

### *1. Lack of Established Methodology*

The Government's notice fails to establish that either witness employs a methodology that has been tested, subjected to peer review, or is generally accepted in the relevant scientific community. The Government merely states that the witnesses will testify about "how extractions of digital devices are performed" and "the types of extractions that can be obtained," without specifying the methodologies employed or establishing their reliability.

In *Daubert*, the Supreme Court emphasized that a key consideration in evaluating expert testimony is "whether the theory or technique in question can be (and has been) tested." 509 U.S. at 593. The Court noted that "scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry." *Id.* (internal quotation marks omitted).

The Government has provided no information about how the proposed witnesses' methodologies have been tested or validated, or whether they follow

established protocols in the field of digital forensics. Without such information, the Court cannot assess whether the testimony meets the reliability requirements of Rule 702 and *Daubert*.

### 2. ***No Proven Methodology Regarding Data Recovery Capabilities***

Perhaps most critically, the Government has failed to establish any proven methodology regarding what can and cannot be recovered from digital devices:

a. Absence of Established Protocol: The Government's notice fails to identify any established, peer-reviewed protocol that the proposed experts follow to determine what data can and cannot be recovered from digital devices.

b. No Error Rate Analysis: Neither proposed expert has provided any analysis of error rates associated with their data recovery techniques, a critical factor under *Daubert*. Without established error rates, their testimony regarding recovered data lacks scientific reliability.

c. Software Limitations Unaddressed: While both proposed experts claim familiarity with various forensic software tools, the Government has not established that either witness possesses expert knowledge regarding the inherent limitations and potential errors of these tools.

d. Lack of Validation Studies: The Government has not presented any validation studies demonstrating the reliability of the specific methodologies these witnesses employ to determine recoverability of deleted data, a critical issue in digital forensics.

e. Subjective Interpretation: Without established methodologies, the proposed experts' opinions regarding what data can or cannot be recovered amount to subjective interpretations rather than scientifically validated conclusions.

In *United States v. Frazier*, the Eleventh Circuit emphasized that an expert's failure to account for alternative explanations or to establish that the methods used

are reliable is grounds for exclusion. 387 F.3d at 1265. Without information about error rates and limitations, the proposed testimony cannot be adequately assessed for reliability.

#### *3. Lack of Independent Validation*

There is no indication that the findings of either proposed witness have been independently validated by qualified experts in the field. This absence of verification undermines the reliability of their conclusions and opinions.

In *Kumho Tire*, the Supreme Court noted that one indicator of unreliable expert testimony is the failure to "satisfy the more general ordinary case-related expert reliability considerations." 526 U.S. at 152. These considerations include whether the expert's work has been subjected to normal professional scrutiny and verification. The absence of independent validation raises serious concerns about the reliability of the proposed testimony.

### C. Both Proposed Witnesses Are Merely Government Agents with Job Training, Not Independent Experts

Both Agent Blackman and Ms. Loughrin are government employees whose training has been provided primarily through their employer. This raises significant concerns:

1. Lack of Independence: As government employees testifying on behalf of the prosecution, both witnesses have an inherent bias that undermines their ability to provide independent expert opinions.

2. Training vs. Expertise: Both individuals have merely received job training to perform their duties as government agents. Such training does not transform an employee into an expert witness.

3. No Peer Recognition: Neither witness has received recognition from peers in the field through publications, speaking engagements, or other professional accomplishments that would validate their expertise.

4. No Demonstrated Methodology: Neither witness has demonstrated adherence to established methodologies that have been tested, peer-reviewed, or generally accepted in the scientific community.

Both proposed witnesses are employees of the Department of Homeland Security, the same agency that investigated this case. As such, they lack the independence and objectivity that should characterize expert testimony. Courts have recognized that government employees who are directly involved in the investigation of a case may have biases that compromise their ability to provide objective expert testimony.

In *United States v. Dukagjini*, 326 F.3d 45 (2d Cir. 2003), the Second Circuit warned of the "heightened danger" when a law enforcement agent testifies as both a fact witness and an expert witness in the same case, noting that such dual testimony may "produce juror confusion, prejudice to the defendant, and unnecessary delay." *Id.* at 53. The court emphasized that "particular care must be taken by the district court to ensure that the jury understands its function in evaluating this evidence" and that "the witness's dual role [does not] create unfair prejudice to the defendant." *Id.*

Similarly, in *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008), the Second Circuit cautioned against allowing law enforcement officers to provide expert testimony that merely "bolster[s] the prosecution's case by explaining the operations of criminal organizations" without true expertise. *Id.* at 190. The court emphasized that such testimony risks becoming "merely another way of submitting to the jury" the prosecution's theory of the case. *Id.*

In the present case, both proposed witnesses are government agents who have been involved in the investigation of the Defendant. Agent Blackman conducted the extraction of the Defendant's device, and Analyst Loughrin was involved in a prior investigation of the Defendant. Their dual roles as fact witnesses and purported expert witnesses create precisely the risks identified in *Dukagjini* and *Mejia*—juror confusion, unfair prejudice, and improper bolstering of the prosecution's case.

**D. <u>The Proposed Testimony Would Not Assist the Trier of Fact</u>**

The Government has failed to establish that the proposed testimony would actually assist the trier of fact in understanding the evidence or determining facts at issue, as required by Rule 702(a). Much of the proposed testimony—such as general explanations about "the internet" and "the functionality of cellular telephones"—constitutes basic knowledge that does not require expert testimony.

For specialized testimony regarding digital forensics and data extraction, the Government should be required to present witnesses with true expertise in these fields, such as individuals with advanced degrees, peer-reviewed publications, and recognized professional certifications.

In *United States v. Frazier*, the Eleventh Circuit emphasized that expert testimony must "assist the trier of fact" by providing "knowledge [that] is not commonplace" and explaining matters "beyond the understanding of the average lay person." 387 F.3d at 1262. The court noted that "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.

Much of the proposed testimony outlined in the Government's notice—such as "how and when an electronic device extraction log deleted data" and "the process by which a user can save, delete, hide and organize digital files on a digital device"—falls into the category of common knowledge that does not require expert testimony.

**E. The Prejudicial Effect of the Proposed Testimony Substantially Outweighs Its Probative Value**

Even if the Court were to find that the proposed witnesses possess some degree of specialized knowledge and that their testimony meets the minimum requirements of Rule 702, the testimony should still be excluded under Federal

Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.

In *United States v. Langford*, 955 F.2d 1545 (11th Cir. 1992), the Eleventh Circuit noted that "[i]t is well established that expert testimony generally is admissible if it will assist the trier of fact to understand evidence or to determine a fact in issue. However, such testimony is not admissible if it will serve primarily to unfairly prejudice the defendant." *Id.* at 1551.

The proposed testimony of Agent Blackman and Analyst Loughrin carries a significant risk of unfair prejudice. By presenting these government agents as "experts," the Government seeks to cloak their testimony with an aura of scientific certainty and reliability that it does not deserve. This presentation would likely lead the jury to give undue weight to their testimony and unfairly prejudice the Defendant.

In *United States v. Scavo*, 593 F.2d 837 (8th Cir. 1979), the Eighth Circuit observed that "expert testimony is potentially dangerous because of its potential to influence the jury unduly." *Id.* at 844. The court emphasized that "the trial judge should carefully weigh the prejudice and probative value of the testimony before permitting it." *Id.*

Given the limited qualifications of the proposed witnesses and the concerns about reliability outlined above, the danger of unfair prejudice, confusion of the

issues, and misleading the jury substantially outweighs the probative value of the proposed testimony.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court exclude the testimony of Special Agent Anthony Blackman and Computer Forensics Analyst Christina Loughrin as expert witnesses. The Government has failed to establish that either witness possesses the qualifications necessary to provide expert testimony under Federal Rule of Evidence 702 and *Daubert*. The Government has also failed to establish that the proposed testimony is reliable, relevant, and would assist the trier of fact. Finally, the prejudicial effect of presenting these government agents as "experts" substantially outweighs any probative value their testimony might have.

In the alternative, Defendant requests that this Court hold a *Daubert* hearing to determine whether the proposed witnesses' testimony meets the standards of relevance and reliability required for expert testimony.

Therefore, Defendant respectfully requests this Honorable Court enter an

[Continued on next page]

Order excluding the expert testimony of Special Agent Anthony Blackman and

Criminal Analyst Christina Loughrin.

**DATED:** May 27, 2025.

Respectfully submitted,

 /s/ Robert Bond
Robert Bond, Esq.
PA Bar number: 308371
Attorney for Defendant, Pro Hac
11880 Bustleton Avenue, Suite 206
Philadelphia, PA 19116
Telephone: (215) 240 7565
Email: Rbond@phillylawcenter.com

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 88.9(a), undersigned counsel conferred with Assistant United States Attorney Elizabeth Hannah, who indicated that the Government objects to the relief sought in this Motion.

/s/ Robert Bond
Robert Bond, Esq.
PA Bar number: 308371
Attorney for Defendant, Pro Hac

**REQUEST FOR A HEARING**

In accordance with Local Rule 88.9(a), Defendant respectfully requests that the Court hear oral argument on Defendant's Motion to Exclude Proposed Government Expert Witnesses.

Defendant submits that thirty (30) minutes per side, for a total of sixty (60) minutes, is sufficient for the parties to argue the issues presented.

A hearing would allow the Defendant to establish the lack of qualifications of the proposed witnesses, the unreliability of their methodologies, and the prejudicial effect of their testimony.

Defendant believes that oral argument would further the Court's understanding of the grounds for exclusion set forth in this Motion and will enable the Defendant to address any questions and/or concerns that the Court may have prior to ruling.

/s/ Robert Bond
Robert Bond, Esq.
PA Bar number: 308371
Attorney for Defendant, Pro Hac

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 27, 2025, undersigned counsel electronically filed the foregoing Defendant's Comprehensive Motion to Exclude Expert Testimony, etc., with the Clerk of the Court using CM/ECF, which will send a Notice of Electronic Filing (NEF) to all counsel of record.

**Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.

**David A. Donet, Jr., Esq.**
Florida Bar No.: 128910
Attorney for Defendant
100 Almeria Avenue, Suite 230
Coral Gables, Florida 33134
Telephone: 305-444-0030
Email: donet@dmtlaw.com
Email: paralegals@dmtlaw.com