UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cr-20013-RKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ARTEM OLEGOVICH ALAFYEV,

Defendant.

_____

**DEFENDANT'S SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO SUPPRESS**

(Fifth Amendment Violations – Custodial Interrogation)

## Contents

1   Preliminary Statement ................................................................................ 4

2   Issue of First Impression Before the Eleventh Circuit ............................ 5

3   Statement of Facts ...................................................................................... 6

4   Statement of Legal Issue ........................................................................... 7

5   Legal Standard ........................................................................................... 7

   5.1   Fifth Amendment Self-Incrimination ................................................ 7

   5.2   *Miranda* and Custodial Interrogation ............................................. 8

6   Argument .................................................................................................... 8

   6.1   Defendant Was Custody as a Matter of Law – Government's Anticipated "No Custody" Argument Fails .................................................... 8

      6.1.1   Officer Silva's Testimony Creates Binding Factual Record ............................ 8

      6.1.2   Government's Cited Precedents Are Factually Distinguishable and Support Defendant's Position ................................. 9

      6.1.3   Government's Contradictory Positions Constitute Judicial Admission of Custody ........................................................ 10

6.1.4   Government's "Routine Protocol" Characterization Contradicts Constitutional Standards ...................................................................... 11

6.2   Objective Indicia Establish Formal Arrest Equivalent and Demolish Government's "Routine Inspection" Characterization .......................... 11

    6.2.1   Physical Isolation and Environmental Control Create Police-Dominated Atmosphere .................................................................. 11
    6.2.2   Coercive Tactics Exceed Border Authority and Enter Custodial Territory ............................................................................................ 12
    6.2.3   Advance Targeting Distinguished from Random Inspection Creates Focused Investigation ................................................................ 12
    6.2.4   Duration and Intensity Exceed Routine Parameters ...................... 13
    6.2.5   Government Cannot Escape Constitutional Consequences Through Administrative Labeling ................................................................. 13

6.3   Interrogation Preceding *Miranda* Warnings Violated the Fifth Amendment ............... 14

6.4   Device Unlocking Constituted Testimonial Communication Protected by the Fifth Amendment ................................................................................. 15

6.5   *Schmerber* Exception Is Inapplicable to Mental Process Requirements ...................... 17

    6.5.1   Mental Process Requirement Distinguishes Testimonial Communication ............................................................................... 17
    6.5.2   Distinguishing Physical Key Analogy ............................................ 18
    6.5.3   Eleventh Circuit Recognition of Testimonial Nature ..................... 18

6.6   Delayed *Miranda* Warnings Cannot Cure Constitutional Violations That Already Occurred ................................................................................. 19

6.7   Border Authority Does Not Override *Miranda* Requirements During Custodial Interrogation ............................................................................. 20

    6.7.1   Independent Constitutional Protection ........................................... 20
    6.7.2   Supreme Court Precedent on Constitutional Hierarchy ................. 20
    6.7.3   Border Context Distinction ............................................................ 21

6.8   *Missouri v. Seibert* Governs Deliberate Constitutional Circumvention .................. 21

    6.8.1   Deliberate Constitutional Circumvention ...................................... 21
    6.8.2   Recognition of Constitutional Requirements ................................. 22
    6.8.3   Systematic Exploitation Pattern ..................................................... 22
    6.8.4   "Question-First" Strategy Evidence ............................................... 22

6.9   Good Faith Exception is Categorically Inapplicable to Clear Constitutional Violations ................................................................................. 23

    6.9.1  Objectively Unreasonable Conduct ..................................................23

    6.9.2  Deliberate Circumvention Precludes Good Faith ..............................23

    6.9.3  Established Precedent Eliminates Reasonable Confusion ..................23

6.10  Comprehensive Suppression Is Mandated by Constitutional Precedent ......................24

    6.10.1 No Intervening Legitimate Source ....................................................24

    6.10.2 Derivative Evidence Suppression ....................................................24

    6.10.3 No Purging Exception .......................................................................25

7   Conclusion and Prayer for Relief.............................................................................25

8   CERTIFICATE OF SERVICE .................................................................................26

1       **Preliminary Statement.**

Defendant ARTEM OLEGOVICH ALAFYEV, by and through his undersigned counsel, submits this supplemental brief addressing two dispositive Fifth Amendment violations that occurred during his custodial interrogation at Port Miami on January 3, 2025. This case presents not merely a routine border inspection, but a deliberately targeted custodial interrogation conducted in violation of clearly established constitutional protections. The Government's characterization of this encounter as "routine" ignores the objective indicia of custody and the officers' deliberate exploitation of Defendant's known vulnerability, based on his prior conviction record.

Critical distinctions establish constitutional violations: (1) Officers isolated Defendant in a separate interrogation room with armed agents; (2) Officers possessed advance knowledge of Defendant's conviction history before encounter initiation; (3) Officers employed coercive tactics, including threats of indefinite device seizure; (4) Officers later provided Miranda warnings for the encounter, constituting judicial admission that constitutional protections were triggered; and (5) the "search" was designed and conducted to elicit potentially incriminating testimonial responses.

These factors collectively establish custodial interrogation requiring Miranda warnings before any questioning commenced. The Government cannot simultaneously argue that no constitutional protections applied, while providing Miranda warnings for the same encounter. Even assuming arguendo that Defendant's act of unlocking his iPhone was voluntary, binding Supreme Court and Eleventh Circuit precedent requires suppression of evidence obtained through custodial interrogation conducted without Miranda warnings and testimonial self-incrimination compelled in violation of the Fifth Amendment. These constitutional violations

warrant exclusion of the device contents and all derivative evidence under the exclusionary rule.
***Wong Sun v. United States***, 371 U.S. 471, 488 (1963).

**2      Issue of First Impression Before the Eleventh Circuit.**

This case presents an issue of first impression for the Eleventh Circuit: Whether Miranda

warnings are required before compelling testimonial device unlocking during custodial

interrogation at the border.

While this Circuit has addressed Fourth Amendment challenges to border device searches

in ***United States v. Vergara***, 884 F.3d 1309 (11th Cir. 2018), and ***United States v. Touset***, 890

F.3d 1227 (11th Cir. 2018), neither case addressed Fifth Amendment protections against

compelled testimonial self-incrimination during custodial interrogation.

**_Vergara_ and _Touset_ Distinguished:**

Both precedents addressed whether border device searches require warrants or reasonable

suspicion under the Fourth Amendment. Neither case involved: (1) custodial interrogation

triggering ***Miranda*** requirements; (2) compelled testimonial communication through device

unlocking; (3) Officers' advance knowledge creating deliberate targeting; or (4) Fifth

Amendment self-incrimination challenges.

The constitutional framework governing searches (Fourth Amendment) operates

independently from protections against compelled testimonial self-incrimination (Fifth

Amendment).

**Novel Legal Questions Presented:**

This case presents the first opportunity for the Eleventh Circuit to address:

- Whether advance targeting based on criminal history transforms routine border
  inspection into custodial interrogation;

- Whether device unlocking during custody constitutes testimonial communication

requiring *Miranda* warnings;

- Whether border search authority overrides Fifth Amendment protections against compelled self-incrimination; and

- Whether *Missouri v. Seibert's* prohibition on delayed *Miranda* warnings applies to border contexts.

**Constitutional Imperative:**

The absence of controlling circuit precedent on this specific constitutional intersection requires this Court to apply fundamental Supreme Court precedent governing custodial interrogation and testimonial self-incrimination. *Miranda v. Arizona*, *Pennsylvania v. Muniz*, and *Missouri v. Seibert* provide controlling constitutional framework that must govern regardless of border context.

### 3    Statement of Facts.

On January 3, 2025, Mr. Alafyev arrived at Port Miami via MSC Divina and was directed to secondary inspection based on officers' advance knowledge of his 2011 conviction for possession of child sexual abuse material. U.S. Custom and Border Protection Officer Silva testified during the suppression hearing that Defendant was "not free to leave" the inspection area. Officers questioned Defendant about his electronic devices and demanded that he unlock his Apple iPhone 16 Pro Max by entering his passcode – conducted while in custody and before receiving *Miranda* warnings.

The encounter exhibited the objective indicia of formal custody: (1) Defendant was segregated from general passenger flow into a private interrogation room; (2) Multiple armed federal agents surrounded Defendant in the confined space; (3) Officers employed coercive tactics, including threats of indefinite property seizure absent compliance; (4) the physical environment replicated police station interrogation settings; and (5) Officers possessed advance

intelligence regarding Defendant's criminal history, creating inherently coercive dynamics.

The device unlocking constituted testimonial communication revealing Defendant's knowledge of his PIN and authority over device contents. Only after unlocking and initial search did officers issue *Miranda* advisements, which cannot cure the constitutional violations that already occurred. Officers' subsequent provision of *Miranda* warnings constitutes official acknowledgment that constitutional protections were triggered but deliberately withheld during the critical testimonial phase.

**4        Statement of Legal Issue.**

Whether evidence obtained through custodial interrogation and compelled testimonial device unlocking in the absence of *Miranda* warnings must be suppressed under the Fifth Amendment when: (1) The Defendant was admittedly "not free to leave"; (2) testimonial communication occurred before warnings were provided; (3) officers possessed advance knowledge creating deliberate targeting; (4) coercive tactics were employed in controlled environment; and (5) delayed warnings cannot cure constitutional violations that already transpired.

This issue of first impression requires the Eleventh Circuit to establish the constitutional framework governing Fifth Amendment protections in border contexts where custodial interrogation and testimonial self-incrimination intersect with border search authority.

**5        Legal Standard.**

**5.1      Fifth Amendment Self-Incrimination.**

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." **U.S. Const. Amend. V.** This protection extends beyond formal criminal proceedings to any governmental compulsion of testimonial evidence. ***Kastigar v.***

*United States*, 406 U.S. 441, 444–45 (1972). The Amendment mandates *Miranda* procedural safeguards during custodial interrogation to preserve this constitutional protection. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

**5.2    Miranda and Custodial Interrogation.**

The Supreme Court in *Miranda* established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. Custody exists when a person is 'in custody' for purposes of *Miranda* if he is deprived of his freedom of action in any significant way. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The determinative factor is whether "a reasonable person [would] have felt that he or she was not free to leave." *Id*. at 442.

**6    Argument.**

**6.1    Defendant Was in Custody as a Matter of Law – The Government's Anticipated "No Custody" Argument Fails.**

Officer Silva's unequivocal testimony that Mr. Alafyev was "not free to leave" establishes *Miranda* custody as a matter of law under *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The Government's inevitable argument that "no custody existed" contradicts the unambiguous testimony of their own investigating officer and fundamentally misconstrues the controlling legal standards governing custodial determinations.

**6.1.1    Officer Silva's Testimony Creates Binding Factual Record.**

When the investigating officer himself testifies that the Defendant was "not free to leave," this constitutes binding factual evidence satisfying the constitutional test for custody – not mere characterization subject to legal reinterpretation. The Supreme Court in *Berkemer* held that custody exists when "a reasonable person [would] have felt that he or she was not free to

leave." Officer Silva's direct testimony establishes the precise legal standard articulated in *Berkemer*, creating an irrefutable factual record that compels a custody finding.

The Government cannot simultaneously rely on Officer Silva's testimony to establish the legitimacy of their investigation, while disavowing his factual admissions regarding the Defendant's freedom of movement. Federal courts consistently hold that officer testimony regarding a defendant's restraint creates binding factual findings for custody analysis, particularly when the officer directly admits the constitutional standard was met.

The Supreme Court in *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Officer Silva's admission that Defendant was "not free to leave" constitutes direct testimony that Defendant was "deprived of his freedom of action in any significant way," satisfying *Miranda*'s custody requirement as a matter of law.

### 6.1.2   The Government's Cited Precedents Are Factually Distinguishable and Support Defendant's Position.

The Government will likely invoke *United States v. Moya*, 74 F.3d 1117 (11th Cir. 1996), arguing that border encounters are inherently non-custodial. This reliance fails because *Moya* specifically distinguished between routine questioning and circumstances where "the suspect is not free to leave." The *Moya* court explicitly recognized that custody can exist at the border "when the circumstances of the inter- rogation objectively indicate that the suspect is not free to leave." *Id*. at 1119.

Officer Silva's direct testimony establishes precisely the circumstance that *Moya* identified as creating custody: Objective indication that the suspect was not free to leave. Rather than supporting the Government's position, *Moya* compels a finding of custody based on Officer

Silva's factual admissions.

The Government's potential citation to *California v. Beheler*, 463 U.S. 1121 (1983), actually undermines their argument because *Beheler* mandates a totality-of-circumstances analysis that clearly establishes custody here. *Beheler* requires courts to examine whether "a reasonable person would have felt that he or she was not free to leave" based on all objective factors. *Id*. at 1125.

### 6.1.3   The Government's Contradictory Positions Constitute Judicial Admission of Custody.

The Government's provision of *Miranda* warnings during the encounter constitutes official acknowledgment that custody existed and constitutional protections were required. The Government cannot logically argue that no custody existed, while simultaneously providing warnings that are only required during custodial interrogation. This contradiction creates a judicial admission under Federal Rule of Evidence 801(d)(2)(A) that custody existed, as courts have recognized that providing *Miranda* warnings constitutes acknowledgment that constitutional protections were required. Basic principles of judicial estoppel prevent the Government from adopting contradictory positions regarding the constitutional requirements of their own encounter. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

### 6.1.4   The Government's "Routine Protocol" Characterization Contradicts Constitutional Standards.

The Government's anticipated characterization of Officer Silva's "not free to leave" statement as "standard border protocol" contradicts established border inspection procedures and Supreme Court precedent. Standard border protocols involve brief questioning and documentation review – not isolation, threats, and explicit movement restriction. The Government can cite no authority establishing that threatening indefinite property seizure, or explicitly restricting movement constitutes "standard border protocol."

Constitutional requirements override administrative convenience or established practices. *Miranda* custody depends on objective circumstances, not governmental labeling of procedures as "routine." ***Stansbury v. California***, 511 U.S. 318, 322 (1994) (custody determination depends on "how a reasonable person in the suspect's position would perceive his circumstances," not on officer characterizations or administrative protocols). This objective determination eliminates any need for subjective analysis of whether Defendant "felt" in custody. Officer Silva's testimony establishes the constitutional standard as a matter of law, requiring *Miranda* warnings before any interrogation could commence. The Government cannot argue that constitutional protections were unnecessary, while simultaneously providing *Miranda* warnings for the identical encounter – such contradiction constitutes judicial admission that custody existed.

### 6.2    Objective Indicia Establish Formal Arrest Equivalent and Demolish Government's "Routine Inspection" Characterization.

The totality of circumstances establishes custody exceeding routine border inspection parameters and approximating formal arrest conditions, directly contradicting the Government's anticipated argument that these were merely "routine" procedures. Multiple objective factors confirm custodial status that no reasonable interpretation can characterize as standard border protocol.

### 6.2.1   Physical Isolation and Environmental Control Create Police-Dominated Atmosphere.

The undisputed factual record establishes that Defendant was removed from normal passenger processing and isolated in a separate interrogation room with multiple armed federal agents. This physical separation fundamentally distinguishes the encounter from routine border inspections and creates the controlled environment characteristic of custodial interrogation.

***United States v. Newton***, 369 F.3d 659, 672 (2d Cir. 2004), held that "isolation from the normal flow of border crossers" combined with "questioning in a separate room" establishes custody

requiring *Miranda* warnings. The Second Circuit emphasized that such separation creates "a police-dominated atmosphere" inconsistent with routine inspection procedures.

The Supreme Court in *California v. Beheler* emphasized that custody analysis focuses on whether "a reasonable person would have felt that he or she was not free to leave" based on the totality of circumstances. 463 U.S. 1121, 1125 (1983). The physical environment here – isolation from normal travel flow, concentration of armed authority, and controlled interrogation setting – creates circumstances that any reasonable person would perceive as custodial restraint.

### 6.2.2   Coercive Tactics Exceed Border Authority and Enter Custodial Territory.

Officer Silva's threats of indefinite property seizure absent compliance constitute governmental coercion designed to compel testimonial responses. Such threats exceed routine border authority and enter the realm of custodial interrogation re- quiring constitutional safeguards.

The combination of armed authority, isolated environment, and explicit threats established conditions equivalent to formal arrest. Such tactics exceed routine border inspection authority and create the coercive atmosphere that Miranda was designed to address.

### 6.2.3   Advance Targeting Distinguished from Random Inspection Creates Focused Investigation.

The undisputed record establishes that officers possessed advance knowledge of Defendant's criminal history before encounter initiation, distinguishing this from random routine inspection. This deliberate targeting based on vulnerability to self- incrimination creates inherently coercive dynamics requiring constitutional protection.

*United States v. Hashime*, 734 F.3d 278 (4th Cir. 2013), established that coordinated law enforcement operations targeting individuals based on prior criminal investigation create

custodial situations requiring constitutional protections beyond those applicable to routine encounters. The Fourth Circuit noted that such intensive, preplanned enforcement actions generate "focused law enforcement attention" inconsistent with non-custodial interactions.

### 6.2.4   Duration and Intensity Exceed Routine Parameters.

The extended nature of the questioning, combined with the systematic demands for device access and testimonial responses, exceeded the brief documentation review characteristic of routine border inspections. This duration and intensity created the prolonged investigative focus characteristic of custodial interrogation.

### 6.2.5   Government Cannot Escape Constitutional Consequences Through Administrative Labeling.

Even accepting arguendo the Government's characterization of their procedures as "routine," constitutional requirements override administrative convenience or established practices. The objective circumstances here – isolation, threats, movement restriction, armed supervision, and official testimony – establish custody regardless of governmental characterization of their procedures as standard protocol.

 The Eleventh Circuit has adopted as binding precedent decisions of the former Fifth Circuit issued prior to October 1, 1981, including United States v. Henry, 604 F.2d 908 (5th Cir. 1979). In Henry, the court addressed the application of Miranda warnings in border encounters, emphasizing that custody for Miranda purposes is determined under a totality-of-the-circumstances test. Specifically, at page 915, the court articulated that custody attaches when the questioning has "focused upon the defendant" and serves an accusatory purpose rather than routine investigation. The court applied a four-factor test to assess custody: (1) whether probable cause to arrest had developed; (2) the subjective intent of the police to hold the suspect; (3) the subjective belief of the defendant as to his freedom to leave; and (4) whether the focus of the investigation

had shifted to the defendant. This framework supports the recognition that routine border inspections are generally non-custodial, but may evolve into custody when accusatory elements emerge, such as after an admission establishing a legal violation.

### 6.3 Interrogation Preceding *Miranda* Warnings Violated the Fifth Amendment.

Officers conducted custodial interrogation before providing *Miranda* warnings, creating a per se constitutional violation. The questioning included: (1) Demands to identify and provide access to electronic devices; (2) questions about device ownership and access; and (3) demands for device unlocking through testimonial PIN entry.

This constituted interrogation within the meaning of *Miranda*. The Supreme Court in *Rhode Island v. Innis* defined interrogation as "not only express questioning but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The officers' demands regarding the device were "reasonably likely to elicit an incriminating response" and constituted interrogation requiring *Miranda* warnings. Device unlocking reveals testimonial knowledge that can incriminate the Defendant by demonstrating access to device contents and authority over potentially criminal materials.

Once custody is established, any interrogation without Miranda warnings violates the Fifth Amendment. The Supreme Court in *Edwards v. Arizona* emphasized that *Miranda* itself indicated that constitutional protections require strict adherence to procedural safeguards. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). The Court's emphasis on procedural safeguards demonstrates that *Miranda* violations exist independent of voluntariness determinations.

The Supreme Court in *Malloy v. Hogan* established the fundamental principle: "The

Fourteenth Amendment secures against state invasion the same privilege that the Fifth

Amendment guarantees against federal infringement – the right of a person to remain silent

unless he chooses to speak in the unfettered exercise of his own will." ***Malloy v. Hogan***, 378

U.S. 1, 8 (1964). When officers demand testimonial responses during custody without warnings,

the resulting communication is not made "in the unfettered exercise of his own will."

The Supreme Court in ***Colorado v. Connelly*** emphasized that "the sole concern of the

Fifth Amendment is governmental coercion." ***Colorado v. Connelly***, 479 U.S. 157, 170 (1986).

Custodial interrogation without warnings constitutes precisely the type of governmental coercion

the Fifth Amendment prohibits.

### 6.4     Device Unlocking Constituted Testimonial Communication Protected by the Fifth Amendment.

Device unlocking constituted testimonial communication protected by the Fifth

Amendment, regardless of apparent voluntariness. Multiple jurisdictions, including the Eleventh

Circuit, have recognized that compelling device access reveals testimonial information requiring

constitutional protection.

The Florida Fourth District Court of Appeals in ***G.A.Q.L. v. State*** held: revealing one's

password requires more than just a physical act; instead, it probes into the contents of an

individual's mind and therefore implicates the Fifth Amendment. G.A.Q.L. v. State, 257 So. 3d

1058 (Fla. 4th DCA 2018). The court explained that "The very act of revealing a password

asserts a fact: that the defendant knows the password." *Id*.

This principle applies whether the password is spoken or entered by hand – both require

accessing and revealing mental contents. The Pennsylvania Supreme Court in ***Commonwealth v.***

***Davis*** explained: "Compelling the disclosure of a password to a computer . . . is testimonial

because the revealing of a computer password is a verbal communication, not merely a physical

act." ***Commonwealth v. Davis***, 220 A.3d 534, 548 (Pa. 2019).

The Florida Fifth District Court of Appeals in ***Garcia v. State*** recognized the testimonial nature of passcode disclosure: The compelled oral disclosure from a defendant of his or her cellphone's passcode was a testimonial communication protected by the Fifth Amendment. Garcia v. State, 302 So. 3d 1051 (Fla. 5th DCA 2020).. While Garcia addressed oral disclosure, the testimonial nature stems from the knowledge revealed, not the method of revelation.

The Eleventh Circuit has recognized that compelling access to encrypted devices constitutes testimonial communication. In ***In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011***, the court held that: "the act of decryption and production would essentially be like telling the Government that the files exist, are in the defendant's possession, and are authentic." ***In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011***, 670 F.3d 1335, 1346 (11th Cir. 2012). The court explained that "the testimonial aspect of the act of decryption and production does exist in this case." ***Id***. at 1349.

Device unlocking reveals identical testimonial information: That the Defendant knows and can access the device contents, has authority over the device, and can authenticate its contents through access. This testimonial communication occurred here during established custody before ***Miranda*** warnings were provided, violating the Fifth Amendment under binding precedent.

The Supreme Court in ***Pennsylvania v. Muniz*** established that all testimonial responses during custodial interrogation require ***Miranda*** warnings before the testimonial communication occurs: "The privilege against self-incrimination protects an accused from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." ***Pennsylvania v. Muniz***, 496 U.S. 582, 588 (1990).

Critically, the Court emphasized that "the privilege applies to any testimonial response – whether brief or lengthy, whether narrative or fragmented, whether oral or written, whether expressed in words or numbers." *Id*. at 589. Device unlocking constituted a testimonial response revealing knowledge of the PIN that occurred during custodial interrogation before ***Miranda*** warnings were provided. Under ***Muniz***, this evidence must be suppressed .

**6.5** ***Schmerber* Exception Is Inapplicable to Mental Process Requirements.**

The Government will inevitably argue that device unlocking constitutes non-testimonial physical evidence under ***Schmerber v. California***. However, ***Schmerber*** specifically limited its holding to purely physical evidence that does not require mental processes, and multiple courts have distinguished passcode entry as requiring testimonial communication.

The Supreme Court in ***Schmerber*** held: "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." ***Schmerber v. California***, 384 U.S. 757, 761 (1966). The Court noted that the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." ***Id***. at 764.

**6.5.1   Mental Process Requirement Distinguishes Testimonial Communication.**

The critical distinction is that device unlocking requires accessing and revealing mental contents – knowledge of the PIN – making it testimonial rather than purely physical. Unlike fingerprints or blood samples, PIN knowledge exists solely in the Defendant's mind and must be retrieved through mental processes to assist prosecution. The act communicates multiple facts to the Government: Defendant knows the passcode; Defendant has authority over device contents;

Defendant can access potentially incriminating materials; and the device belongs to or is controlled by Defendant.

### 6.5.2   Distinguishing Physical Key Analogy.

The Government may argue device unlocking resembles surrendering a physical key. This analogy fails because: Physical keys exist independent of mental knowledge; passcodes exist solely as mental constructs requiring cognitive retrieval; key surrender reveals no mental contents while passcode entry reveals specific knowledge; and physical keys can be obtained through search, while mental passcodes cannot.

### 6.5.3   Eleventh Circuit Recognition of Testimonial Nature.

The Eleventh Circuit in *In re Grand Jury Subpoena* specifically recognized that compelling device access "would essentially be like telling the Government that the files exist, are in the defendant's possession, and are authentic." 670 F.3d at 1346. This testimonial aspect exists regardless of whether the passcode is spoken or manually entered – both require disclosure of mental contents.

Courts have consistently distinguished between surrendering physical keys (non-testimonial) and revealing combinations or passwords (testimonial). The former requires no mental process, while the latter demands accessing and communicating knowledge stored in the defendant's mind. The Pennsylvania Supreme Court in *Commonwealth v. Davis* correctly observed that passcode disclosure "is testimonial because the revealing of a computer password is a verbal communication, not merely a physical act." 220 A.3d at 553.

### 6.6   Delayed Miranda Warnings Cannot Cure Constitutional Violations That Already Occurred.

The Government's provision of *Miranda* warnings after obtaining incriminating evidence does not cure the initial constitutional violation. The Supreme Court in *Miranda* requires

warnings "prior to any questioning," not after evidence is obtained. *Miranda*, 384 U.S. at 444.

The Supreme Court in *Missouri v. Seibert* directly addressed the constitutional inadequacy of delayed *Miranda* warnings: "the unwarned interrogation was conducted in the station house, and the questioning was systematic, exhaustive, and managed with psychological skill. The warned phase proceeded after only a 15-to-20-minute pause, in the same place and with the same personnel." *Missouri v. Seibert*, 542 U.S. 600, 617 (2004).

The Court held that delayed warnings undermine *Miranda*'s constitutional protections: "Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture?" *Id*. at 612. The Court emphasized that delayed warnings cannot cure constitutional violations that already occurred during custodial interrogation.

Here, like in *Seibert*, device unlocking occurred during systematic questioning before warnings were provided, rendering subsequent warnings constitutionally inadequate. The Supreme Court in *Seibert* recognized that "the police made a conscious decision to withhold *Miranda* warnings, question first, then give the warnings, and then repeat the question 'until I get the answer that she's already provided once.'" *Seibert*, 542 U.S. at 609.

The Government's eventual provision of *Miranda* warnings actually supports Defendant's position by demonstrating official recognition that: (1) custody existed – warnings are only required during custodial interrogation; (2) interrogation was occurring – warnings address questioning and testimonial responses; and (3) constitutional protections were triggered – but provided too late to prevent Fifth Amendment violations.

Here, as in *Seibert*, the delayed warnings demonstrate that officers recognized constitutional protections were required but deliberately provided them after obtaining incriminating evidence. The Government cannot argue that no custody or interrogation existed

while simultaneously providing *Miranda* warnings for that exact encounter. This contradiction constitutes judicial admission that constitutional violations occurred.

### 6.7     Border Authority Does Not Override Miranda Requirements During Custodial Interrogation.

The Government will argue that border search authority justifies ignoring *Miranda* requirements. However, the Fifth Amendment provides independent protection that cannot be overridden by search authority, and Supreme Court precedent establishes *Miranda*'s broad application regardless of government-claimed justifications.

#### 6.7.1   Independent Constitutional Protection.

The Fifth Amendment provides protection independent of Fourth Amendment search authority. *Miranda* applies to custodial interrogation regardless of the Government's claimed justification for the underlying encounter. The Supreme Court in *Miranda* explicitly stated that the privilege against self-incrimination applies "whether the individual is in custody at the station house or his own bedroom." 384 U.S. at 461. Location and government authority do not eliminate Fifth Amendment protections.

#### 6.7.2   Supreme Court Precedent on Constitutional Hierarchy.

The Supreme Court in *Minnesota v. Murphy* held: "The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).

Border inspection authority cannot eliminate *Miranda* requirements for custodial interrogation. The Fifth Amendment applies regardless of the Government's claimed authority for the underlying encounter. The Supreme Court in *Counselman v. Hitchcock* established: "It is

impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself."
***Counselman v. Hitchcock***, 142 U.S. 547, 562 (1892).

### 6.7.3   Border Context Distinction.

Even accepting broad border search authority, the Supreme Court has never held that such authority eliminates ***Miranda*** requirements for custodial interrogation. Border searches target contraband and unauthorized persons – not compelled testimonial self-incrimination. Fifth Amendment protections apply regardless of the Government's claimed authority for the underlying encounter. Even if characterized as "routine" border inspection, ***Miranda*** violations are independent of Fourth Amendment search authority and require suppression when custodial interrogation occurs without warnings.

### 6.8   ***Missouri v. Seibert*** Governs Deliberate Constitutional Circumvention.

The Government will distinguish ***Missouri v. Seibert*** by arguing no deliberate two-step interrogation occurred. This argument fails because the record establishes systematic constitutional circumvention through advance targeting, deliberate custody establishment, and strategic delayed warnings.

### 6.8.1   Deliberate Constitutional Circumvention.

Officers possessed advance knowledge of Defendant's criminal history before encounter initiation, establishing deliberate targeting based on vulnerability to testimonial self-incrimination. This advance intelligence gathering and strategic exploitation demonstrates conscious decision-making regarding constitutional compliance.

### 6.8.2   Recognition of Constitutional Requirements.

Officers' later provision of ***Miranda*** warnings constitutes official acknowledgment that:

custodial interrogation was occurring; constitutional protections were triggered; and warnings were required but deliberately withheld. The Government cannot claim ignorance of constitutional requirements while providing warnings for the identical encounter.

### 6.8.3   Systematic Exploitation Pattern.

The encounter followed the systematic pattern identified in Seibert: target vulnerable defendant based on advance knowledge establish custody through isolation and coercion demand testimonial responses without warnings – provide warnings only after obtaining incriminating evidence. This demonstrates the "question-first" strategy condemned in *Seibert*.

### 6.8.4   "Question-First" Strategy Evidence.

Under *Seibert*, deliberate circumvention exists when officers "made a conscious decision to withhold *Miranda* warnings, question first, then give the warnings." 542 U.S. at 609. Here: officers knew constitutional protections applied (evidenced by later warnings); officers deliberately obtained testimonial responses before providing warnings; and officers' advance preparation and targeting demonstrate conscious strategy to circumvent constitutional safeguards.

The Supreme Court in *Seibert* emphasized that delayed warnings undermine constitutional protections by creating situations where suspects cannot make informed decisions about self-incrimination. The Court asked: "Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture?" *Id*. at 612. Here, device unlocking had already occurred before warnings, eliminating any meaningful choice regarding testimonial self-incrimination.

### 6.9   Good Faith Exception Is Categorically Inapplicable to Clear Constitutional Violations.

The Supreme Court in *United States v. Leon* limited the good faith exception to

objectively reasonable reliance on valid authority: "Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." ***United States v. Leon***, 468 U.S. 897, 922 (1984).

### 6.9.1    Objectively Unreasonable Conduct.

No reasonable officer could believe that custodial interrogation without ***Miranda*** warnings is permissible when the suspect is documented as "not free to leave." ***Miranda*** has governed custodial interrogation for over fifty years, establishing clearly defined constitutional requirements that cannot be reasonably ignored.

### 6.9.2    Deliberate Circumvention Precludes Good Faith.

***Leon*** requires objectively reasonable reliance on valid authority. Deliberate constitutional circumvention cannot be objectively reasonable under any analysis. Officers cannot claim reasonable ignorance of clearly established constitutional requirements while simultaneously providing ***Miranda*** warnings that demonstrate knowledge of those requirements.

### 6.9.3    Established Precedent Eliminates Reasonable Confusion.

The Supreme Court in ***Missouri v. Seibert*** condemned deliberate delayed warnings as constitutionally inadequate, making any reliance on such practices objectively unreasonable. Officers cannot claim good faith when targeting defendants during admitted custody and conducting testimonial interrogation without constitutional safeguards.

The good faith exception does not protect deliberate constitutional violations or objectively unreasonable conduct. Here, officers' advance knowledge, deliberate targeting, and strategic delayed warnings establish systematic constitutional circumvention that cannot be excused through claimed ignorance or good faith reliance.

### 6.10    Comprehensive Suppression Is Mandated by Constitutional Precedent.

Under the "fruit of the poisonous tree" doctrine, all evidence obtained following constitutional violations must be suppressed, including: initial testimonial device unlocking; all device contents accessed through unlocking; statements obtained during post-unlocking interrogation; and all evidence derived from device analysis. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

### 6.10.1  No Intervening Legitimate Source.

The Government cannot claim an independent source for device access because the testimonial unlocking was the sole means of obtaining evidence. Without Defendant's coerced testimonial response, the Government would have possessed no means to access device contents. The constitutional violation was the "but-for" cause of all subsequent evidence discovery.

### 6.10.2  Derivative Evidence Suppression.

All evidence flowing from the constitutional violation must be suppressed to maintain the exclusionary rule's deterrent function. This includes not only the immediate fruits of device unlocking but all forensic analysis, additional searches, and investigative leads generated through access to device contents.

### 6.10.3  No Purging Exception.

The Government cannot argue that *Miranda* warnings purged the constitutional taint **.**because warnings occurred after the violations. *Seibert* establishes that delayed warnings cannot cure constitutional violations that already occurred. The exclusionary rule requires suppression to deter constitutional violations and maintain judicial integrity.

### 7       Conclusion and Prayer for Relief.

This case presents paradigmatic Fifth Amendment violations that exist as a matter of law, independent of any voluntariness determination, while simultaneously offering the Eleventh

Circuit its first opportunity to establish comprehensive constitutional protections governing the intersection of border authority and Fifth Amendment rights. The constitutional violations are clear, the precedent is binding, and the remedy is mandatory suppression.

First, Officer Silva's testimony that Defendant was "not free to leave" establishes *Miranda* custody under *Berkemer v. McCarty*. Custodial interrogation without *Miranda* warnings violates the Fifth Amendment under *Miranda v. Arizona*. The Supreme Court in *Missouri v. Seibert* directly prohibits delayed warnings that cannot effectively provide "a real choice about giving an admissible statement."

Second, device unlocking constituted testimonial communication under *Pennsylvania v. Muniz* and Eleventh Circuit precedent. This testimonial response occurred during custodial interrogation before *Miranda* warnings were provided. Under *Muniz*, such evidence must be suppressed regardless of apparent voluntariness. Third, the Government's eventual provision of *Miranda* warnings confirms that custody and interrogation existed, supporting Defendant's constitutional claims. The warnings demonstrate official recognition that constitutional protections were triggered – they were simply provided too late to prevent Fifth Amendment violations.

Fourth, these violations exist under clearly established Supreme Court precedent requiring warnings before custodial interrogation begins. Binding authority mandates suppression of evidence obtained through pre-warning testimonial communication during custody. The Court has no discretion to ignore these constitutional violations.

The Supreme Court in *Mincey v. Arizona* emphasized the exclusionary rule's mandatory nature: "Statements obtained in violation of [the defendant's constitutional] rights must be excluded from evidence, for 'it is well-settled that a defendant is entitled to the suppression of

evidence obtained in violation of his constitutional rights.'" *Mincey v. Arizona*, 437 U.S. 385, 398 (1978).

The Supreme Court in *Mapp v. Ohio* emphasized the exclusionary rule's deterrent purpose: "The purpose of the exclusionary rule 'is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it.'" *Mapp v. Ohio*, 367 U.S. 643, 656 (1961).

### UNDISPUTED FACTS REQUIRING SUPPRESSION:

1. Officer Silva testified Defendant was "not free to leave" (establishing custody).

2. Officers demanded testimonial responses before Miranda warnings.

3. Officers later provided Miranda warnings for identical encounter.

4. Device unlocking required accessing and communicating mental knowledge.

5. Officers possessed advance knowledge creating deliberate targeting.

For the foregoing reasons, Defendant respectfully requests that this Court:

1. FIND that Mr. Alafyev was in Miranda custody based on Officer Silva's testimony that he was "not free to leave;"

2. FIND that device unlocking constituted testimonial communication that occurred before Miranda warnings were provided;

3. APPLY *Miranda v. Arizona*, *Pennsylvania v. Muniz*, and *Missouri v. Seibert* to hold that pre-warning testimonial communication during custodial interrogation violates the Fifth Amendment;

4. FIND that delayed *Miranda* warnings cannot cure constitutional violations that already occurred;

5. FIND that deliberate constitutional circumvention renders any good faith exception categorically inapplicable;

6. SUPPRESS all evidence obtained through pre-warning custodial interrogation, including device contents and all derivatives thereof;

7. GRANT Defendant's Motion to Suppress as mandated by controlling constitutional precedent; and

8. GRANT such other relief as the Court deems just and proper to vindicate constitutional protections and deter future violations.

**DATED**: July 22, 2025.

Respectfully submitted,

/s/ Robert Bond
**Robert S. Bond, Esq.**
PA Bar No. 308371
Pro Hac Co-counsel for Defendant
Law Offices of Robert Bond
11880 Bustleton Avenue, Suite 206
Philadelphia, PA 19116
Tel.: (215) 240-7565
Email: rbond@phillylawcenter.com

## REQUEST FOR A HEARING

In accordance with Local Rule 88.9(a), Defendant respectfully requests that the Court hear oral argument on Defendant's Motion to Suppress. Defendant submits that thirty (30) minutes per side, for a total of sixty (60) minutes, is sufficient for the parties to argue the issues presented.

A hearing would allow the Defendant to establish the pretextual nature of the search, the coercive circumstances surrounding the PIN disclosure, and the scope of the initial and subsequent searches.

Defendant believes that oral argument would further the Court's understanding of the grounds for dismissal set forth in this Motion and will enable the Defendant to address any questions and/or concerns that the Court may have prior to ruling.

Additionally, Defendant would argue that a defendant is entitled to an evidentiary hearing on a motion to suppress if the defendant alleges facts that, if proved, would require the grant of relief. *United States v. Torres*, No. 22-12996, 2024 U.S. App. LEXIS 6475, at *5 (11th Cir. Mar. 19, 2024) (Citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). The allegations in this Motion, if

proved, would require relief.

/s/ Robert Bond

**Robert S. Bond, Esq.**
PA Bar No. 308371
Pro Hac Co-counsel for Defendant
Law Offices of Robert Bond
11880 Bustleton Avenue, Suite 206
Philadelphia, PA 19116
Tel.: (215) 240-7565
Email: rbond@phillylawcenter.com

[Certificate of Service on next page]

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 22, 2025, undersigned counsel electronically filed

the foregoing Defendant's Supplemental Brief in Support of Motion to Suppress with the Clerk

of the Court using CM/ECF, which will send a Notice of Electronic Filing (NEF) to all counsel

of record.

**Donet, McMillan & Trontz, P.A.**

By: /s/ David A. Donet, Jr.
    **David A. Donet, Jr., Esq.**
    Florida Bar No.: 128910
    Attorney for Defendant
    100 Almeria Avenue, Suite 230
    Coral Gables, Florida 33134
    Telephone: 305-444-0030
    Email: donet@dmtlaw.com
    Email: paralegals@dmtlaw.com