UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20013-RKA

UNITED STATES OF AMERICA

v.

ARTEM OLEGOVICH ALAFYEV,

**Defendant.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO SUPPRESS EVIDENCE**

On January 3, 2025, the Defendant, Artem Olegovich Alafyev, entered the United States at the Port of Miami aboard the passenger cruise ship MSC Divina. After the Defendant applied for entry to the United States, Customs and Border Protection inspected the Defendant's person and possessions. After the Defendant unlocked his phone, Customs discovered that the Defendant possessed child sexual abuse material on one of his electronic devices. The Defendant now files a second Motion to Suppress Evidence (DE 64) (the "Motion") obtained as a result.

This Court should deny the Defendant's Motion the fruits of his cellphone because (1) the manual entry of a passcode to unlock a digital device is not a statement within the meaning of the Fifth Amendment; (2) the Defendant was not in custody for *Miranda* purposes when he provided the password to his phone; and (3) even if the Fifth Amendment were applicable, the physical fruits of an unwarned, voluntary statement are not subject to suppression. *United States v. Patane*, 542 U.S. 630, 634 (2004); *United States v. Morgan*, --- F.4th ---, 2025 WL 1911585, at *13 (11th Cir. July 11, 2025) ("Although that statement was the product of a *Miranda* violation, it was still voluntary—and its fruits were therefore admissible."). For these reasons, the Court should deny the Motion without a hearing.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On January 3, 2025, the Defendant arrived at the Port of Miami after disembarking from a passenger cruise ship. At primary screening, Customs and Border Patrol ("CBP") referred the Defendant, who has a prior conviction related to the possession of child sexual abuse material ("CSAM"), to secondary screening. He was not handcuffed or arrested. He was offered water, a snack and allowed to use the bathroom. He was not held overnight. No one drew a weapon.

In secondary screening, the Defendant was not handcuffed, and he never asked to leave. Law enforcement never told the Defendant that he was under arrest. The Defendant's traveling companion was allowed to wait in the secondary area and the Defendant sat with her when he was not speaking with officers in the interview room. There were only a handful of officers present during this secondary inspection and none of them drew their weapons. The interview room used had a desk and typically only one or two officers are present while speaking with a person being inspected. The Defendant stated that he owned and had exclusive access to the Apple iPhone 16 Pro Max (the "Phone") in his possession. CBP asked the Defendant to provide his passcode. He refused. CBP then offered the Defendant a legally-permissible choice: they could keep the Phone and attempt to break into it, or he could unlock it for them. The Defendant chose to manually unlock the Phone. He did not verbally tell or write down the passcode for CBP. The Defendant opened the Phone multiple times. On almost every occasion he shielded the passcode from view when entering it. However, on at least one occasion made no efforts to shield his passcode from CBP and so, because of the position of the Phone, a CBP officer was able to observe the passcode.

CBP conducted a basic manual review of the Defendant's unlocked Phone. In this preliminary review of the Phone, CBP observed apparent CSAM. After this, the investigation

2

transformed from a customs inspection to a criminal investigation. CBP then reached out to Homeland Security Investigations ("HSI"), and a special agent from HSI's Child Exploitation Group responded to the scene and conducted his own review. After HSI observed apparent CSAM on the Defendant's phone, the Defendant was read *Miranda* warnings. The Defendant declined to provide a statement to law enforcement about the contents of his Phone. Based on their review of the device, HSI agents arrested the Defendant and obtained a criminal complaint. (*See* DE 1). HSI later completed a forensic extraction of the Defendant's Phone.

On January 15, 2025, a federal grand jury returned a two-count indictment against the Defendant for Transportation of Visual Depictions Involving Sexual Exploitation of Minors, in violation of 18 U.S.C. § 2251(a)(1) and (b)(1), and Possession of Visual Depictions Involving the Sexual Exploitation of Minors, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (DE 7).

### LEGAL STANDARDS

The Fifth Amendment privilege against self-incrimination only protects testimonial communications. *Doe v. United States*, 487 U.S. 201, 210 (1988). If the Fifth Amendment privilege applies, *Miranda* warnings are required only where law enforcement (1) interrogates (2) someone in custody. *United States v. Phillips*, 812 F.3d 1355, 1360 (11th Cir. 1987). Whether someone is in custody turns on the objective determination—under the totality of the circumstances—whether a reasonable person would feel a restraint on his freedom of movement fairly characterized as that "degree associated with a formal arrest" to such extent that he would not feel free to leave. *Stansbury v. California*, 511 U.S. 318, 323 (1994).

At the border, only questioning that is "distinctly accusatory" triggers the *Miranda* warnings. *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). *See also United States v. Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996).

## *ARGUMENT*

The Court should deny the Defendant's Motion for three independently sufficient reasons. *First*, the Defendant's *act* of unlocking the Phone in a manner that law enforcement could observe did not constitute a testimonial admission. *Second*, even if this Court finds the passcode is a statement, the Defendant's "statement" was not made in custody. *Third*, even if he was in custody, the fruits of his statements should be suppressed *only if* his statement was involuntary. Even under his own version of the facts, he cannot show this.

### A. The Fifth Amendment is Not Implicated by the Physical Act of Unlocking a Phone.

The physical act of unlocking a phone is not a statement or testimonial communication within the meaning of the Fifth Amendment. To be a testimonial communication, an act must "relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988).

Here, the Defendant merely unlocked his iPhone to allow it to be inspected. He did not verbally provide the passcode. Nor did he write it down for CBP. The fact that law enforcement was able to ascertain the passcode—because the Defendant did not conceal it—does not transform an action into a testimonial communication. The Defendant merely engaged in conduct—unlocking the Phone—that allowed law enforcement to access information that was incriminating.

On this point, consider *United States v. Oloyede*, 933 F.3d 302, 309 (4th Cir. 2019). There, law enforcement asked a defendant to open her phone, and the defendant typed in her passcode out of the law enforcement's view. The Fourth Circuit concluded that she "used the unexpressed contents of her mind to type in the passcode herself." *Id.* That is exactly what happened here. The Defendant shielded his passcode from view, successfully on almost every occasion. The fact that

4

law enforcement *happened* to see his code on one occasion does not transform an act into a communication. *Id.* ("Unlike a circumstance, for example, in which she gave the passcode to the agent for the agent to enter . . ."). He did not communicate his passcode to the law enforcement. The Defendant does not argue—nor could he—that law enforcement required him to open the Phone in front of them where they could see the passcode. *See, e.g., United States v. Booker*, 561 F. Supp. 3d 924, 936 (S.D. Cal. 2021) (finding involuntary where law enforcement told defendant to input passcode in front of agents).

Along the same lines, the Defendant's inputting of his passcode falls into a long-recognized exception to the definition of testimonial communications. In *United States v. Hubbell*, the United States Supreme Court recognized that "incriminating evidence may be the byproduct of obedience to a regulatory requirement, such as filing an income tax return, maintaining required records, or reporting an accident," and that those requirements "do[] not clothe such required conduct with the testimonial privilege." 530 U.S. 27, 35 (2000).

Here, federal regulations mandates that "[a]ll persons, baggage and merchandise arriving in the Customs territory of the United States from places outside thereof are liable to inspection by a Customs officer." 19 C.F.R. § 162.6. The Defendant was attempting to gain entry to the United States and to bring items along with him. His person and his baggage were subject to inspection. Because the Defendant and his baggage were subject to inspection, he was required to either open the device for inspection or the device would be forensically searched. The same would be true if the Defendant was in possession of a locked suitcase. The act of opening the phone at the border does not have a testimonial privilege because it is the byproduct of obedience to a regulatory requirement. In this context, it is no more a statement than unlocking a suitcase would be.

Even if there was a statement or testimonial communication, the Defendant was not compelled to enter his passcode to the device, and therefore there was no Fifth Amendment violation. *See Fisher v. United States*, 425 U.S. 391, 408 (1976) (Fifth Amendment privilege "applies only when the accused is compelled to make a Testimonial Communication that is incriminating"). As the CBP Officer testified at the suppression hearing, the Defendant was informed that he had the choice to enter his passcode for his device, or have it detained for a border search.

### B. The Defendant Was Not Required to Be Given His *Miranda* Rights at the Border Because He was Not in Custody.

Even if entering the passcode was a testimonial communication, the Defendant's Fifth Amendment rights were not violated because he was not in custody when law enforcement asked him to unlock his Phone. Contrary to the Defendant's claim that this is a question of first impression, the Eleventh Circuit *has* dealt with the application of the Fifth Amendment to questions at the border. The Eleventh Circuit has explained that "when a suspect is detained in a border zone, whether interrogation is 'custodial' should be interpreted in light of the strong governmental interest in controlling the borders." *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). "[Q]uestioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest." *Id.* (citing *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996). "That one expects both constraints and questions—and that, at least initially, every traveler in the airport must submit to the same sort of questioning while not free to leave—reduces the likelihood that reasonable persons in that situation would consider themselves to be under arrest." *United States v. FNU LNU*, 653 F.3d 144, 154 (2d Cir. 2011).

Put another way, because a reasonable person should expect a certain degree of questioning

6

and processing at the border, "events which might be enough often to signal 'custody' away from the border will not be enough to establish 'custody' in the context of entry into the country." *Moya*, 74 F.3d 1117, 1120 (11th Cir. 1996). Indeed, restrictions on an individual's movement that are the result of a routine border inspection do not entitle an individual to *Miranda* warnings. *See United States v. Manta-Carillo*, 491 F. App'x 125, 128 (11th Cir. 2012) ("[W]e recognize that [the defendant] was unable to leave the [ship] and the [ship] was unable to leave the port during the inspections; however, these restrictions on his movements were the result of a routine border inspection."); *see also United States v. Lueck*, 678 F.2d 895, 899 (11th Cir. 1982) ("Interrogation at the border constitutes one notable exception to the constitutional protection of *Miranda*. Because of the overriding power and responsibility of the sovereign to police national borders, the Fifth Amendment guarantee against self-incrimination is not offended by routine questioning of those seeking entry to the United States.")

In *Moya*, the Eleventh Circuit found that a detained suspect was not in custody during a pre-arrest interview where: (1) he was not physically moved or restrained by officers during the interview; (2) no handcuffs were employed; (3) no guns were drawn; (4) he was not booked; (5) told of formal accusations; (6) was not told that he was under arrest; (7) the defendant did not ask to leave and was not told that he was not free to do so; and (8) the defendant made no admissions during the interview that would have led a reasonable person in his place to conclude that he would be arrested immediately. *Moya*, 74 F.3d at 1120). *See also United States v. Tineo*, 2024 WL 2862289, at *4 (E.D.N.Y. June 6, 2024) ("The Court finds that Defendant was not in custody when he first provided the passcode at approximately 2:55 P.M. while in the secondary inspection area, prior to being placed in handcuffs, and before the discovery of cocaine.").

7

All of those factors are also true here. The Defendant was not physically moved or restrained during the interview. He was not handcuffed. He was not threatened. No guns were drawn. He was not booked. He was not told of formal accusations. He was not told he was under arrest. He did not ask to leave. He did not make any admissions that would have led a reasonable person to conclude that he would be arrested immediately. The question law enforcement asked—for the Defendant's Phone's passcode—was not accusatory. He was not in custody and so *Miranda* did not attach.

The fact that the Defendant *was not* free to leave—because he was in secondary—is irrelevant given that he was at the border. The Defendant was not under arrest—and he was never told he was under arrest—until *after* he provided the passcode. "That one expects both constraints and questions—and that, at least initially, every traveler in the airport must submit to the same sort of questioning while not free to leave—reduces the likelihood that reasonable persons in that situation would consider themselves to be under arrest." *United States v. FNU LNU*, 653 F.3d 144, 154 (2d Cir. 2011).

Nor is the fact that the Defendant was subsequently arrested relevant. *United States v. Padilla*, 2006 WL 3678567, at *13 (S.D. Fla. Nov. 17, 2006) ("Agent Fincher's subjective belief concerning whether he could compel Defendant's testimony and/or had the ability to arrest Defendant is irrelevant to the issue of whether Defendant legally was in custody, until the time he communicated those beliefs to Defendant."); *United States v. Willoughby*, 2011 WL 13136957, at *10 (N.D. Ga. Oct. 21, 2011) (King, M.J.) (denying motion to suppress statements even where Defendant was told that he had violated the law, noting "[a]lthough Defendant was not free to leave at that time, he never attempted to leave and was not told that he was not free to leave."). And where—as here—"the defendant is not told that [he] is the suspect of a crime, courts are less

8

likely to find a custodial interrogation." *United States v. Soleimani*, 2019 WL 7559295, at *15 (N.D. G.A. Sept 25, 2019) (citation omitted). Because every factor the Eleventh Circuit has directed courts to consider weighs in favor of finding that the Defendant was not in custody, this Court should deny the Motion.

      Against all this the Defendant asserts eight arguments—all which are unavailing. (DE 64).

      *One*, the Defendant repeats that he was not free to leave, and that Officer Silva told him he was not free to leave. (DE 64 at 8–10). But he ignores that he was at the border. "That one expects both constraints and questions—and that, at least initially, every traveler in the airport must submit to the same sort of questioning while not free to leave—reduces the likelihood that reasonable persons in that situation would consider themselves to be under arrest." *United States v. FNU LNU*, 653 F.3d 144, 154 (2d Cir. 2011). The Defendant never engages with the fact that he was *attempting to enter the country* and therefore submitting himself to the "overriding power and responsibility of the sovereign to police national borders." *United States v. Lueck*, 678 F.2d 895, 899 (11th Cir. 1982). Accordingly, "the Fifth Amendment guarantee against self-incrimination is not offended by routine questioning of those seeking entry to the United States." *Contra* Defendant's Motion (DE 64 at 20 ) ("Border inspection authority cannot eliminate Miranda requirements for custodial interrogation.").

      *Two*, the Defendant asserts that the administration of *Miranda* warnings is a "party opponent" statement that is binding on the United States that he was in custody. (DE 64 at 10). The Defendant ignores the chronology. *Miranda* warnings were read *after* the passcode was provided and apparent CSAM was located. *Miranda* warnings were only necessary and thus read prior to HSI asking specific accusatory questions about the CSAM. He also argues that judicial estoppel applies. But he cites no authority for the proposition that a CBP officer's statement

constitutes a binding position of the United States of America. Further, because no court has taken action in reliance on that statement, there are no estoppel principles in play.

*Three*, the Defendant asserts that the fact that the routine at issue here—primary, then secondary screening—violates Constitutional requirements. (DE 64 at 10–11). His characterization of his few hours in secondary screening as "indefinite property seizure" in violation of the Constitution runs squarely into Supreme Court and Eleventh Circuit precedent. *See, e.g.*, Lueck, 678 F.2d at 899 ("Interrogation at the border constitutes one notable exception to the constitutional protection of *Miranda*. Because of the overriding power and responsibility of the sovereign to police national borders, the Fifth Amendment guarantee against self-incrimination is not offended by routine questioning of those seeking entry to the United States."); *United States v. Ramsey*, 431 U.S. 606, 616 (1977) ("searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border, should, by now, require no extended demonstration."). The same Congress that proposed the Bill of Rights—including the Fourth Amendment—*also* passed the first customs statute that gave customs officials "full power and authority" to enter and search "any ship or vessel, in which they shall have reason to suspect any goods, wares or merchandise subject to duty shall be concealed." Act of July 31, 1789, c. 5, 1 Stat. 29.

*Four*, the Defendant says that he was "isolated in a separate interrogation room" with "multiple armed federal agents" means that he was in custody. (DE 64 at 11–12). He cites *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004) in support of this proposition. But *Newton* is not a border search case—it occurred at the defendant's residence. And in *Newton*, (unlike here) the defendant was handcuffed. *Id.* at 676 ("Handcuffs are generally recognized as a hallmark of a

10

formal arrest."). The fact that the Defendant was placed in a room with more than one CBP officer—without any evidence that he saw their weapons or that they displayed them—does not convert a routine border interview into an arrest.

*Five*, the Defendant complains that he was given the choice of opening his Phone or CBP would seize it, but that is a legally permissible choice. An explanation of CBP's legally permissible options did not compel the Defendant into unlocking his Phone. *See e.g.*, *United States v. Gavino* WL 2024 WL 85072, at *9 (E.D.N.Y. Jan. 7, 2024) ("Contrary to the defendant's contentions, Officer Sottile did not engage in coercive conduct by "threat[ening] to deprive Mr. Gavino of his property,"—an apparent reference to Officer Sottile's statement that while he could unlock the defendant's phone without the passcode, doing so would require "send[ing] [the phone] to a lab and [the defendant] might not get it back for several months.") (Kovner, J.).

*Six*, the Defendant argues that he was selected for screening based on his past conduct and this somehow supports suppression. (DE 64 at 12–13). In making this argument, the Defendant cites *United States v. Hashime*, 734 F.3d 278 (4th Cir. 2013) in support. Respectfully, that case says nothing of the sort. In *Hashime*, the Court suppressed statements because the defendant was not *Mirandized* during the search of his home. *Id.* The Court did not say that "coordinated law enforcement operations" require additional constitutional protections.

*Seven*, the Defendant claims—without support—that the extended nature of the questioning create a custodial interrogation. (DE 64 at 13). But he does not cite any cases—or explain—why the delay associated with entering the country would cause his arrest to turn into a custodial arrest. The Eleventh Circuit has affirmed far longer delays than was experienced by the Defendant here, as "routine." *See McDowell*, 250 F.3d at 1363 ("To the extent McDowell argues that the duration (approximately four hours) converted this inquiry into a custodial interrogation,

11

we are unpersuaded.").

*Eight*, the Defendant argues that labelling something "routine" cannot avoid the Constitution. (DE 64 at 13). The United States agrees that facts—not labels—matter. The Defendant's label of his brief sojourn in a secondary screening as "custody" does not make it so.

Because every factor the Eleventh Circuit has directed courts to consider weighs in favor of finding that the Defendant was not in custody, this Court should deny the Motion.

## C. *Even if There were a Violation of the Fifth Amendment, the Exclusionary Rule Would Not Apply Because the Defendant's Will was Not Overborne.*

Assuming *arguendo* that the fact that the Defendant input his passcode in a place where a CBP officer could see it constituted a communication, that it was not part of the border-inspection process, and that he was in custody—and therefore needed to be *Mirandized*, the Court should still deny the Motion because the Defendant's statement was voluntary. The Supreme Court and the Eleventh Circuit have both held that the physical fruits of an unwarned, voluntary statement are not subject to suppression. *United States v. Patane*, 542 U.S. 630, 634 (2004).[1]

In *Patane*, officers arrested the defendant for violating a restraining order and never provided him with complete *Miranda* warnings. *Id.* at 635. Officers then asked the defendant whether there was a firearm in his residence, and defendant stated that there was a pistol in his bedroom. *Id*. Defendant was charged with possession of that firearm by a convicted felon. *Id*. The Supreme Court held that the firearm should not be suppressed despite it having been recovered pursuant to a statement made in violation of *Miranda*. *Id*. at 634. The Court reasoned that "the core protection afforded by the Self–Incrimination Clause is a prohibition on compelling a criminal

---

[1] Given this, the Defendant's argument as to *Missouri v. Seibert* is inapposite. (DE 64 at 14; 18–20; 22; 24). The United States is not seeking to introduce the Defendant's statements after he was *Mirandized*.

defendant to testify against himself at trial." *Id*. at 637. And again, "the *Miranda* rule is a prophylactic" – the sole purpose of which is to "protect against violations of the Self–Incrimination Clause." *Id*. at 636. Therefore, because "[t]he Self–Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a voluntary statement," there can be no "justification for extending the *Miranda* rule to this context." *Id*. at 636–37. The Eleventh Circuit has emphasized that no *Miranda* violation "that produces a voluntary statement is severe enough that the deterrence value of suppression outweighs 'the important probative value of reliable physical evidence.'" *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (quoting *Patane*, 542 U.S. at 645) (Kennedy, J., concurring in the judgment)).

The Defendant's claim that entering the passcode was involuntary fails. To determine if a statement was voluntary, the Court must consider the totality of the circumstances and factors like the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, (1973); *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) (illustrating factors properly to be considered in totality-of-the-circumstances inquiry), *overruled on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009). Here, the length of the detention was consistent with a normal secondary inspection at the border, the questions were related to completing a border inspection of the Defendant's items, there was no physical force, threat of force or the use of any promises or inducement, and the Defendant was provided accurate information about the inspection process.

At best, the Defendant points to two circumstances as evidence of coercion: (1) the presence of armed law enforcement officers; and (2) the fact that the Defendant was (accurately) informed that if CBP was unable to access the Phone, the Phone would be detained for further

13

examination. The presence of law enforcement officers is an inherent characteristic of a law enforcement encounter. The mere presence of officers who are wearing their service weapons does not transform an ordinary law enforcement encounter into compulsion. Similarly, the CBP officer accurately informing the Defendant of the inspection process, including the need to review or detain his Phone do not make the Defendant's decision to unlock the Phone involuntary. In fact, the Defendant was given options and accepted the option of his choice—consistent with the voluntariness of the Defendant's actions.

## CONCLUSION

For the reasons set forth above, this Court should deny the Defendant's Motion.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:  *s/Brianna Coakley*
Brianna Coakley
Assistant United States Attorney
Court ID No. A5503184
United States Attorney's Office
99 NE 4th Street, 6th Floor
Miami, Florida 33132
(305) 961-9127
Brianna.Coakley@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which provides electronic notice of the filing.

*s/Brianna Coakley*
Brianna Coakley